77   225
d103 582

# Richmond.

## James v. Stokes and Als.

## James v. Harris and Als.

### March 22d, 1883.

1. JURISDICTION—*Justices.*—The law limiting the jurisdiction of justices is founded on public policy, and no manipulation of a debt can affect such jurisdiction.

2. IDEM—*Idem—Trial by jury.*—By the United States Constitution, in suits at common law where the value in controversy exceeds $20, the right of trial by jury is preserved. By the Virginia Constitution, in controversies respecting property, such mode of trial is declared preferable and sacred. Though by law in this state the jurisdiction of justices has at various times been enlarged, yet experience has taught the wisdom of adhering to fundamental principles and of returning to the old limits.

3. IDEM—*Idem—Manipulation in fraudem legis.*—The limitation by law cannot be changed by one, or by both of the parties, and such efforts have been held to be *in fraudem legis.*

4. IDEM—*Idem—Prohibition.*—Where, under pretext of acquiescence of parties, the justice has extended his jurisdiction beyond that fixed by law, he has uniformly been checked by writ of prohibition.

5. IDEM—*Idem—Hudson* v. *Lowry,* 2 Virginia cases, reviewed and approved. The rulings thereof are founded on the soundest principles of public policy, and are within the plainest terms of the law, and are re-affirmed.

6. IDEM—*Idem—Case at bar.*—In 1877 S. was indebted to J. $126.73, and executed to him three bonds each for one-third thereof, payable at two, three and four months, respectively. When all were due, a justice rendered three separate judgments thereon, and issued *fi. fa's,* and placed them in the hands of constable C., who collected part, and was proceeding to collect remainder, when S. applied to circuit court for a writ of prohibition, which was awarded. Upon error here,

HELD :—(Richardson, J., dissenting.)

    By the plain terms of the law the jurisdiction of the justice was

limited to $50, but by the creditor's methods, *in fraudem legis*, the justice usurped jurisdiction of a debt, which, though severed into divers sums, was still $126.73, in defiance of the law, and the writ of prohibition was properly awarded to check such usurpation.

Two cases heard together.

Error to judgment of circuit court of Goochland, rendered 6th September, 1879, on petition of Z. I. Stokes for a writ of prohibition against the appellant, John D. James, and R. S. Saunders, a justice, and John I. Cheatwood, a constable, of said county ; and error to judgment of same court, rendered same day, on similar petition of Charles F. Harris and Henry Harris, against same defendants.

Stokes owed James $126.73 upon open account for store-goods, and executed three several bonds, each for $42.24, parts thereof payable in two, three, and four months. When all fell due, the justice rendered on each a separate judgment, and issued a writ of *fieri facias*, which the constable collected part of, and was proceeding to collect remainder when Stokes applied to circuit court for a writ of prohibition, which was awarded.

The second judgment was against C. F. and H. Harris, as garnishees, under the said writs of *fi. fa.* To these judgments James obtained from one of the judges of this court writs of error and *supersedeas*.

*Petitt & Leake*, for the appellants.

No counsel for the appellees.

LACY, J., delivered the opinion of the court:

The facts of this case are not controverted, and are as follows : On the 10th day of July, 1877, the appellee (Stokes) was indebted to the appellant (James) in the sum of $126.73, and that for the said debt he executed three several obligations or notes—the first

for $42.24, payable sixty days after date; the second payable ninety days after date, for the sum of $42.24; the third for the sum of $42.25, payable four months after date, the said 10th day of July, 1877. Afterwards, when the three notes were matured and all due—to-wit., on the 30th day of November, 1877—one R. S. Saunders, a justice of the peace of the said county, rendered against the appellee (Stokes) three separate and distinct judgments on said notes for said debt of $126.73 in favor of the said James, the first of the said judgments being for the sum of $42.24, the amount of the first of said notes, with interest and costs, $1; the second of said judgments being for the sum of $42.24, the amount of the second of the said notes, with interest and $1 costs; and the third of the said judgments being for the sum of $42.25, the amount of the third of the said notes, with interest and costs, $1.

On the 25th day of July, 1878, the said justice issued writs of *fieri facias* against the appellee, which went into the hands of one John I. Cheatwood, a constable, who collected $15 on them, and was proceeding to further execute the said writs against the appellee, Stokes, when the said Stokes applied to the circuit court of Goochland county for a writ of prohibition, to prohibit the appellant, the said magistrate and the said constable, from further proceedings against him in the premises. A rule was awarded on the 4th day of September, 1879, and on the 6th day of the same month the writ of prohibition, as asked for, was awarded against the said parties. And from that judgment the appellant applied to this court for a writ of error and *supersedeas;* which was awarded.

The jurisdiction of a justice of the peace in this state, at the date of the judgments aforesaid, was limited to $50. The claim of the appellant, James, against the appellee, Stokes, was $126.73. In order to give the justice jurisdiction of this debt, which under the laws of this state was too large to come within his jurisdiction, the said James induced the said debtor to cut it up in three bonds, each of which was less than $50, and so bring-

ing the said debt of $126.73, within the jurisdiction of the justice. If this debt of $126.73 could thus be cut up into several debts of less than $50 each, and so give the justice jurisdiction of the debt, which was by law beyond his jurisdiction, then in any case whatever, by a similar manipulation of the amount, a debt of any amount might be so brought within the jurisdiction of the justice, and thus the provisions of the law fixing and limiting this jurisdiction might be, in any case, rendered nugatory. In our opinion the limitations of the law fixing and limiting the jurisdiction of the justice are eminently wise and proper, and founded on the soundest principles of public policy; and whether that be so or not, the provisions of the law cannot be disregarded; and no manipulation of a debt can alter or affect the jurisdiction as prescribed by law for that tribunal.

The laws are framed and enacted by the people for the common benefit; and among the fundamental principles of our government we find the trial by jury is guaranteed to the citizens. In the constitution of the United States it is provided, in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. In the constitution of Virginia it is provided, that in controversies respecting property, and in suits between man and man, the trial by jury is preferable to any other and ought to be held sacred. The laws of this state have been wisely framed, so as to preserve to every citizen the right to a trial in a competent court, where his property-rights are involved; and while the machinery of trial by jury is provided in the courts of record in this state, the jurisdiction of the justice has, with rare exceptions, been limited to controversies concerning small claims; and although at various periods in the history of this state this jurisdiction has been enlarged by the legislature, experience has soon taught the wisdom of adhering to fundamental principles, and a return to the old limits. Whatever the limitation at any time may be by law, it cannot be changed by any one of the parties, nor by a combination between both

of the parties, and every effort so to do has been held to be in fraud of the law. The justice cannot, under any pretext of acquiescence of the parties, take jurisdiction beyond the limit fixed by law. His jurisdiction is given by law alone, and is, in every case, what the law fixes it at. The consent of the parties cannot enlarge it. In the history of this state the efforts of the justice to extend his jurisdiction beyond the limits prescribed by law have been checked by the mandate of the higher courts in the form of the writ of prohibition.

A prohibition is a writ issuing properly out of a superior court to an inferior court, commanding them to cease from the prosecution of a suit, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court. This writ may issue either to inferior courts of common law, or to a justice, or justices of the peace, if they hold plea of any matter above their jurisdiction; this is a remedy provided by the common law to redress the grievance growing out of an encroachment of jurisdiction, or calling one *coram non judice*, to answer in a court that has no *legal* cognizance of the cause; and the constitution of this state, in providing the jurisdiction of this court, has carefully preserved this ancient remedy for an abuse of power on the part of the inferior courts; and this court is given original jurisdiction in writs of prohibition, and appellate jurisdiction in all cases of prohibition without regard to the smallness of the claim, so as to provide a remedy for the smallest encroachment on the part of the inferior courts, as well as for the largest.

It is earnestly contended in this case, that by cutting up this debt, the subject of controversy in this case, three new debts were made, and each one of the three was brought within the law, and that suit might have been maintained on each separately at different times; the debt remained the same debt however it was sub-divided. It was beyond the limit fixed by the

law for the justice, and it was a debt which the law had placed under the jurisdiction of another and a higher court, and as to which the law guaranteed the right of trial by jury. And whatever may have been, or may not have been done with the several notes as they fell due, the case here is, that a party had a claim of $126.73, evidenced by three bonds all due, and against the same party, and it can be regarded by the law only as one debt. Mr. Minor, in his admirable treatise, says upon this subject: "When an entire claim exceeds $20, and has been divided into several parts, each not exceeding $20, and separate securities are taken therefor *and all are due*; it seems the better opinion in this case that the courts of record cannot thus be deprived of their jurisdiction, nor the defendant of his right to trial by jury, and that a writ of prohibition will be awarded by the circuit court to prohibit the *usurpation.*" Vol. IV, part I, p. 206–207 Minor's Institutes.

And when a fictitious credit is entered in order to reduce the amount to $20 or less. This, also, is believed to be inadmissible, being *in fraudem legis.* It deprives the courts of record of the jurisdiction which the law assigns them, and thus infringes upon public policy; and it takes away from the defendant one of the most important incidents of the contract as he made it—namely, the incident of the trial by jury.

Mr. Minor cites the cases of *Hutson* v. *Lowry and others*, 2 Va. Cases 42, decided by the general court in 1816. In that case the debtor owed the creditor eighty dollars, and gave four single bills for twenty dollars each, payable respectively at one day, and at one, two and three months after date; and after all became due the creditor obtained warrants from a single magistrate to recover these several sums. The debtor obtained from the superior court a writ of prohibition to prevent the justice from proceeding, because the justice had not jurisdiction in the cases, all the notes constituting only one debt. The judgments had been all actually rendered, the execution levied, and the

money in the hands of the constable. The debtor gave notice to the constable not to pay the money over. The court awarded the writ of prohibition.

The superior court adjourned that case to the general court for a decision on the following points:

1. Whether the aforesaid justice of the peace had jurisdiction to render the aforesaid several judgments.

2. Whether the satisfaction of the said judgments, by executions previous to this motion, should prevent the court from awarding a writ of prohibition in th t case.

It may be observed that that case is very parallel to this case, if, indeed, it is not entirely the same.

In that case, as in this, it was earnestly contended that the debtor by his own act had severed the debt, and that being so severed the magistrate had jurisdiction; that the bills were, as in this case, payable at different times; that suit might have been brought on each note at different times, and also that the judgments had been rendered and executions had been issued and the money made by the constable.

On the other hand, in that case, as in this, it was contended that a debt is that which one man owes to another; the whole sum due and payable on all the notes constituted but one debt. The debt being due by specialty will not sever the debt into several debts (as regards the jurisdiction of the courts) any more than the circumstance of an open or current account, depending upon different witnesses, could authorize a separate action of assumpsit, upon every particular admitting of proof by a different witness.

Referring to the case of *Girling* v. *Alders*, 1 Ventris, 73. "When one contracted with another for divers parcels of malt, the money to be paid for each parcel being under forty shillings, and he levied divers plaints thereupon in the said court; wherefore the court of king's bench granted a prohibition, because though they be several contracts, yet inasmuch as the plaintiff might have joined them all in one action, he ought to have

done so and sued here, and not put the defendant to unnecessary vexation, any more than he can split an entire debt into divers, to give the inferior court jurisdiction *in fraudem legis.*"   "So, if there be several contracts between A. & B. at several sums, each under forty shillings, but amounting in the whole to a sum sufficient to entitle the superior court to a jurisdiction, they shall be sued for in such superior court, and not in an inferior court which is not of record." 1 Ventris, 65.  See also Bacon's Abridgment; Wilson's ed., 5 vol., p. 668.

It will give the creditor a vast amount of power over his debtor.

1. The creditor, by choosing to sever, deprives the debtor of . the benefit of counsel, who are not admitted, or themselves, or their fees noticed before a single justice.

2. The creditor thereby chooses whether he will oust the defendant of the benefit of jury trial.

3. The creditor thereby eventually might choose whether his debtor should have a writ of error in the supreme tribunal of Virginia, although the amount in controversy is of sufficient magnitude to admit of an appeal or writ of error.

The debtor might claim to have the debt against him consolidated.  If the justice should consolidate, he would· oust his jurisdiction; if he should refuse, the debtor would. still be deprived of rights already considered.

It has been said that the defendant puts it in the power of the plaintiff· to harrass him by several suits by giving several obligations.  This. is not admitted.  The question controverted is, whether the creditor has the power.  Besides, the consent of parties cannot give the court jurisdiction; if it cannot directly, why should it obliquely take a greater effect? . The court said: "The court having seen and inspected the record in this case, and maturely considered the questions adjourned, doth decide that the justice in the said record mentioned had not jurisdiction to render the several judgments therein also mentioned; and that the satisfaction of the said. judgments, by executions at

the time when a writ of prohibition was moved for, ought not
to prevent the awarding of such writ, as it appears by the
said record that the money so made remained, at the time of
the making the said motion, in the hands of the said con-
stable, and that he had notice not to pay it over. Which is
ordered to be certified to the said superior court." That case
has never been overruled to this day, but has remained to the
present time the rule upon the subject in this state; and the
circuit court of Goochland in this case, in the judgment herein
rendered, has but followed this well-known and oft-quoted case.
We are of opinion that the rulings of that case are founded on
the soundest principles of public policy, and within the plain
terms of the law, and should be reaffirmed by this court in this
case, which is in all its details and circumstance almost identical
with that. There are many cases of prohibition concerning the
encroachments of magistrates, which have been decided in this
court like *Miller* v. *Marshall*, 1 Virginia Cases, 158, and other
cases, but they proceed upon different circumstances, and are
not applicable to this case. In the case of *Hendricks* v. *Shoe-
maker*, 3d Grattan, 197, cited at bar, and relied on to overturn
*Hutson* v. *Lowry*, we find the question at issue wholly different.
In that case the magistrate was not only not without jurisdic-
tion to hear motions on constables' bonds, but such jurisdiction
was expressly conferred by the very terms of the law. Judge
Baldwin in delivering the opinion of the court in that case said:
"The court is of opinion that by the express provisions of the
thirty-first section of the act concerning the county and other
inferior courts, and the jurisdiction of justices of the peace, the
party injured by the failure of a constable to pay over money
received by him, on an execution issued by a justice, may
recover the same, with interest and costs, by motion against a
constable and his securities; and any justice of the peace, in
the county of the court of which such constable's official bond
is deposited, is empowered to hear such motion and render judg-
ment thereupon. The jurisdiction thus conferred upon the jus-

tice does not in any wise depend upon the value of the execu-
tion, or of the judgment upon which it issued," &c., &c.

The jurisdiction of the justice being thus conferred by the
express mandate of the law, he has the jurisdiction under the
law, and not outside of it and in defiance of its plain terms.

In this case, by the express terms of the law, his jurisdiction
is limited to $50, but by oblique methods, he usurped jurisdic-
tion of a debt of $126.73 in plain violation, and in defiance of
the law so limiting his jurisdiction.

For the foregoing reasons we are of opinion that the circuit
court did not err in awarding the writ of prohibition here com-
plained of, and are of opinion to affirm the said judgment.

RICHARDSON, J., dissenting, said:

On the 10th day of July, 1877, the defendant in error, Z. I.
Stokes, was indebted to the plaintiff in error, John D. James, in
the sum of $126.73, for goods sold by the latter to the former.
The said John D. James was desirous of having payment of
said debt from said Stokes, and was about to institute a suit
against Stokes to enforce the same, when said Stokes agreed that
if the said James would indulge him for sixty, ninety, and one
hundred and twenty days for different parts of the sum of money,
so due by open account, that he would close the open account by
giving his bonds for different parts of the sum of money so due
from him, and would pay the bonds as they should fall due;
and that thereupon and in consideration of this agreement and
in pursuance thereof, the said Stokes did, on said 10th day of
July, 1877, execute and deliver to him, the said James, his three
bonds—one for $42.24, payable sixty days after date; one for
$42.24, payable ninety days after date; and the third and last
for $42.25, payable four months after date. The said Stokes
failed to pay any part of either of said bonds as they fell due;
and afterwards, on the 2d day of November, 1877, the said
James delivered said three bonds to a constable for collection;

and on the 28th day of November, 1877, R. S. Saunders, a justice of Goochland county, on the application of said constable, issued three separate warrants—one for each of said three bonds—which being regularly served and returned by said constable, John J. Cheatwood, the said justice rendered a judgment on each of the said three bonds, and issued executions thereon, which executions were delivered to said constable for levy, and that levy was made, and $15 collected by virtue thereof by said constable. On the 17th day of August, 1878, two debtors of said Stokes—C. F. Harris and Henry Harris—having been regularly proceeded against in this cause for the enforcement of said judgments, by process of garnishment, judgments were rendered against them, and executions issued, &c.

Upon these facts the said Stokes, the debtor, and also said garnishees, C. F. Harris and Henry Harris, respectively applied to the circuit court of Goochland county for a writ of prohibition. In their petitions they allege that said justice had no jurisdiction in the premises, for the reason that said several judgments are for parts of one debt, and in the aggregate amount to a sum exceeding the jurisdiction of a justice of the peace. Upon these petitions a rule was directed to be issued by said court, and was issued, requiring the parties, said John D. James, said justice and said constable to appear, forthwith, before said circuit court to show cause why the writs of prohibition, as prayed for by the petitioners, should not be awarded.

The rule was served on the fourth day of September, 1879, and on the next day, September the 5th, this cause was heard upon the said petitions and answers, and evidence, and thereupon said circuit court gave judgment, awarding the writs of prohibition as prayed for. And thereupon the plaintiff in error, said John D. James, applied to and obtained from said circuit court a certificate of the facts proved at said trial, signed, sealed and made a part of the record in said causes. The facts thus certified are those already stated. They amount to this: the defendant in error, said Stokes, was indebted to the plaintiff in

error in $126.73 ; the plaintiff in error wanted, and was entitled to have, his money, and was about to proceed to institute suit to recover it; the defendant in error wanted further indulgence, and it was extended to him by taking his three bonds for the amounts, and payable at the times before stated.

After getting this indulgence for his own accommodation, and on his own terms, the defendant in error failed to pay said bonds, or either, or any part of them ; and all remaining unpaid, the plaintiff in error, after being thus delayed for a period, in which he might have made his entire debt had he proceeded as he first intended to do, proceeded to collect the same through a constable upon warrants before a justice.  And when he had obtained his judgments severally upon his said separate and several evidences of debt, and had by proper proceedings against said Stokes and his debtors in effect secured his debts, the defendants in error shelter themselves under the commonwealth's writ of prohibition, not upon any meritorious, but upon the technical and presumably patriotic plea, that a court of record, to-wit: the said circuit court of Goochland county was attempted to be ousted of its rightful jurisdiction.  Can it be true that the said judgment of the circuit court is warranted by either the letter, or spirit of any statute, or adjudicated case in Virginia?  It is claimed that said judgment is borne out by the case of *Hutson* v. *Lowry,* 2 Virginia Cases, 42, decided by the general court in the year 1816, and then with three of the nine judges sitting dissenting.  The state of the law in Virginia then, regulating the jurisdiction of justices of the peace, was widely different from what it is at this time.  Then the state itself was in its infancy; then the jurisdiction of a justice upon a claim for money did not exist where the demand, even by one cent, exceeded the sum of twenty dollars.  When this proceeding was had, the jurisdiction of a justice had been extended, in a qualified way, to fifty dollars, and has since been extended to one hundred dollars.  All this has been done to meet the demands of the times.  The public

necessities required a cheaper and more speedy mode of set-
tling the great mass of plain ordinary demands between citi-
zen and citizen than it was possible to have in the courts
of record.  Hence the increased jurisdiction of justices of the
peace, the palpable benefits of which enure, beyond ques-
tion, more to the advantage of the debtor than to the cred-
itor class.  These very cases illustrate the fact.  The costs
in each of them, as disclosed by the record, was one dollar.
Had the same suits been brought in the circuit court, or had all
three of the bonds in question been consolidated in one suit, the
costs, without appearance by the defendant, would have been,
most likely, five times as much.  This, of itself, in the absence
of any statute or rule of law, absolutely excluding all claim to
jurisdiction on the part of the magistrate, ought to suffice to
show the great impropriety of the judgment of the circuit court
of Goochland.

Is there any such statute or rule of law?  There certainly is
not.  Let us, then, look to the case of *Hutson* v. *Lowry,* before
referred to, and if it does not give countenance to said judgment,
then there is no warrant therefor in Virginia.  In that case the
creditor's claim was eighty dolllars, and he *split it up* into four
claims of twenty dollars each ; and thereby, it is palpable that
he would, but for the intervention of the superior court, have
ousted it, not only as to the original debt of $80, but also of
each part, when so split up.  The several bonds here were each
for a sum within the jurisdiction of the circuit court, and could
have been sued on in that court separately, subject only to the dis-
cretionary power vested therein, of consolidating them.  So, in
this case each of the bonds was within the prescribed juris-
diction of the justice, subject only to the limitation in favor of
the right of trial by jury, by which the debtor, each claim
exceeding twenty dollars, had by statute the right to have each
case removed to the county court—a court of record—where,
by statute, he could demand and have a jury to try each case.  See
§ 1, chapter 147, and § 8, chapter 164, Code 1873.

Surely, then, there is no sufficient reason for saying the circuit court was ousted of its jurisdiction, or could be by the proceedings taken by the plaintiff in error before a single justice; because, not only could the debtor have removed each and all three of the cases to the county court, with the privilege of trial by jury there, but each demand against him being in excess of $20, he could, if aggrieved there, have appealed to the circuit court, as has been expressly decided by this court in the recent case of *Carter's adm'or* v. *Kelly, Judge*, 28 Grat. 787. That case serves well to illustrate the danger of employing on slight ground the summary remedy by prohibition. It was a claim of $43, prosecuted before a justice, and by the defendant removed to the county court, where judgment was rendered for the plaintiff, and an appeal was taken to the circuit court of Scott county; and thereupon application was made to this court for a writ of prohibition to restrain and prohibit the Hon. John A. Kelly, judge of said circuit court, from taking cognizance or jurisdiction of said appeal. In delivering the opinion of the court Judge Christian said (p. 789): "It is urged by counsel for the petitioner here that the words in the second section of the act of April, 1874, 'exclusive jurisdiction of causes removed from a justice,' takes away the right of appeal to the circuit court. We cannot give this construction to the statute. That would be to declare that the general law regulating appeals, which gives the right of appeal in all cases from judgments of the county court, except the *single case* of a judgment rendered on an appeal from a judgment of a justice, was repealed by the words, 'exclusive jurisdiction in this act.'" The words "exclusive jurisdiction" are very broad in their signification; they would certainly seem to afford greatly more reason for the remedy by writ of prohibition in that case than can be derived from the case of *Hutson* v. *Lowry* (*supra*), as authority for the action of the circuit court of Goochland in the case now under consideration.

The fact is, that *Hutson* v. *Lowry* is not authority applicable here. The cases are by no means alike. In that case, unsatis-

factory as it was in the then state of the law, it is apparent that the creditor must have split his demand for the purpose of ousting the superior court of jurisdiction, specially lodged therein by law, and under circumstances which would have cut the debtor off from trial by jury. Not so in this case; for while the claim was divided into three several distinct claims, and several and distinct bonds taken, it was done at the instance and for the accommodation of the debtor—it was an indulgence asked for by him; and because it would seem the creditor extended more indulgence than was asked for, by waiting until all the bonds were due, when he had beyond all question the right to sue either in the circuit court or before a justice upon each bond separately in succession as they fell due, it is claimed in effect that his indulgence must be visited upon him as a penalty. Surely it ought to require some inflexible rule to work such gross wrong to the creditor without any earthly benefit to the debtor. I know of no such rule, and if such a one existed, it would be "more honored in the breach than in the observance."

Again, it is said that the law as laid down by Mr. Minor in the fourth volume of his admirable work, at page 206, part the first, sustains the action of the circuit court. He says: "Where an entire claim exceeds $20, and has been divided into several parts, *each not exceeding* $20, and separate securities are taken therefor, and all are due, the *better* opinion seems to be that the courts of record cannot thus be deprived of their jurisdiction, *nor the defendant of his right to trial by jury.*" Observe, Mr. Minor makes the whole question turn upon the fact that no part of the claim, split up, exceeds $20, by which the debtors right to a trial by jury is lost.

It is too apparent, to admit of further discussion, that each claim in this case does exceed $20, and that the right of trial by jury was not and could not be defeated if desired, and that the law, as stated by Mr. Minor, is flatly opposed to the action taken by the circuit court in the judgment complained of, and that

there is no sanction therefor in the case of *Hutson* v. *Lowry,* before referred to.

Again, the case of *Hendricks* v. *Shoemaker,* 3 Grat. 197, very clearly, upon principle, settles the law differently from the principle claimed to have been laid down in *Hutson* v. *Lowry.* In that case (*Hendricks* v. *Shoemaker*) a creditor proceeded by one joint notice for several claims against a constable and his sureties for several defalcations in not paying over money collected; all of which defalcations were described in one and the same notice, and aggregated over $600. The magistrate gave a separate judgment as to each claim, and the defendants obtained a writ of prohibition from the superior court of Russell county. The case came here upon a writ of error, and in delivering the opinion of this court Judge Baldwin said: "The jurisdiction thus conferred upon a justice does not in anywise depend upon the value of the execution or of the judgment upon which it has been issued; nor can it be at all affected by the circumstance that the party prosecuting such motion is, at the same time, entitled to and actually prosecuting other motions against the same constable and his securities, before the same or any other justice, * * * * * * &c. The remedy being given for each separate default of the officer, the jurisdiction of the justice cannot in any instance be ousted by the number or aggregate amount of the several defaults; and that the judgments being separate and distinct, the circuit court ought not to have awarded the prohibition," &c., &c.

The well known and salutary rule against splitting up claims for the purpose of ousting a court of law, by fraud, of its jurisdiction, has been distorted by the circuit court of Goochland into a meaning never before attached to it. Many English cases might be cited to illustrate the true. application of the rule as here contended for. The king against the sheriff of Herefordshire, 1 B., and Adol. 672, referred to by counsel for the plaintiff in error, is exactly in point. In a note to that case it is said, "If there be *one entire contract* above forty shillings, and a man

sues for it in a court baron, severing into divers small sums under forty shillings, a prohibition shall be granted, because this is done to defraud the court of the king;" citing 11 Hen. 6, 54. Thus the English doctrine, as I contend here, makes the splitting into parts less than the jurisdiction of the court of record, the offense against which the rule is intended to guard. It is plain, therefore, that the action of the circuit court was unauthorized, and ought to be reversed and annulled. For these reasons I cannot concur in the opinion of the majority of the court.

JUDGMENT AFFIRMED.