## Richmond.

### ADAMS v. JENNINGS.

March 9, 1905.

{ Absent, Cardwell, J.

1. JUSTICES OF PEACE—*Jurisdiction—Splitting up Claims—Consent— Judgment—Collateral Attack—Prohibition.*—While a writ of prohibition will be awarded to prevent a Justice of the Peace from taking jurisdiction of a debt in excess of one hundred dollars which has been split up into notes, each less than one hundred dollars, all of which are due, and for which separate warrants are being prosecuted before him, yet where such warrants have proceeded to judgment before the Justice, with the consent or acquiescence of the defendant, such judgments cannot be thereafter collaterally assailed by third persons. This result does not in any degree impinge upon the maxim that consent cannot give jurisdiction, as the Justice had jurisdiction over the amount represented in each judgment.

Appeal from a decree of the Circuit Court of Campbell county, in a suit under the style of *Canada* v. *Ward*, in which a rule was awarded against appellant to show cause, if any he could, why he should not be debarred from participating in the disposition of the purchase money arising from the sale of the lands of the defendant against whom he held several unsatisfied judgments which were alleged to be void.

*Reversed.*

The opinion states the case.

*Caskie & Coleman, James H. Guthrie* and *A. S. Hester*, for the appellant.

*Wilson & Manson,* for the appellees.

KEITH, P., delivered the opinion of the court.

The question for decision in this case arises upon a decree entered in the chancery suit of *Canada* v. *Ward,* pending in the Circuit Court for Campbell county, rejecting certain judgments obtained by Adams against Vandegrift before a justice of the peace, three of which were for the sum of $100 each, and the other for $80.30, with interest and costs. These judgments stood upon the judgment docket of Campbell county, and the commissioner refused to report them, upon the ground that the justice before whom they were recovered had no right to split up the claim of R. E. Adams in order to bring it within his jurisdiction.

The land in this suit was sold to Burruss, who, being advised of the existence of these judgments, and that Adams had not been made a party to the cause, excepted to the confirmation of the report of sale, and the court awarded a rule against Adams, requiring him "to appear and show cause why he should not be debarred from participating in the purchase money."

In answer to the rule Adams appeared, and stated that the judgments in controversy were recovered by him at the date mentioned, and were for the several amounts stated in the report; that they were in all respects valid, and had never been called in question by Vandegrift, the defendant in the judgments. Adams insisted that these judgments could not be collaterally inquired into, and that no testimony with respect to them was admissible; but it was agreed that, if the law upon that point should be otherwise, the facts with reference to the judgments were as follows:

"Beauregard Vandegrift was indebted to R. E. Adams in the sum of $380.30 under a contract for the purchase of timber,

which debt arose out of one contract, and was all due at one time. After said debt was due, the claim was sent by the creditor Adams, to C. R. Nicholls, a constable of Campbell county, for collection. Nicholls, without the knowledge of Adams, cut up the original debt into four notes, three for $100 each, and the fourth for $80.30, all falling due on February 20, 1897, and on the 20th of March, 1897, obtained four judgments on the said notes, three of which were for the sums of $100 each, and the fourth for $80.30, before J. W. Lindsay, a justice of the peace of Campbell county, abstracts of which are filed in the record."

When the case came on to be heard, the judge of the Circuit Court was of opinion that those judgments were invalid, and from that decree this appeal was taken.

In addition to the facts already stated, it is pertinent to observe that the judgments are in all respects regular—that is, there is no question that the amount represented by them was due; that Beauregard Vandegrift was fully cognizant of all that was done with respect to the debt, and had notice of the proceeding before the justice, and made no objection thereto, and, so far as this record discloses, is not now objecting to the claim of appellant, Adams.

One of the cases relied upon, in support of the decree of the Circuit Court, is *Hutson* v. *Lowry*, reported in 2 Va. Cas. 42. In that case it appears that A owed B $80, and gave four several single bills for $20 each, payable at one day, and at one, two, and three months, after date, respectively; and that, after the last note fell due, B obtained warrants from a justice to recover these several sums. "Held, that A may obtain from the Superior Court a writ of prohibition to prevent the justice from proceeding because the justice has not jurisdiction in the cases, all the notes constituting only one debt; that if the money is in the hands of the constable, the prohibition will still go, the

·defendant having given notice to the constable not to pay over the money to the plaintiff."

The grounds upon which that case went were "(1) that the creditor, by choosing to sever the debt into parts, deprives the debtor of the benefit of counsel, who are not admitted, nor themselves or their fees noticed before a single justice; (2) the creditor thereby chooses whether he will oust the defendant of the benefit of jury trial; and (3) the creditor thereby eventually might choose whether his debtor should have a writ of error in the supreme tribunal of Virginia, although the amount in controversy is of sufficient magnitude to admit of an appeal, or writ of error." The court held that the justice had not jurisdiction to render the several judgments mentioned, and awarded the writ of prohibition.

In *James* v. *Stokes* and *James* v. *Harris,* 77 Va. 225, the case of *Hutson* v. *Lowry* was followed; the syllabus stating that "the law limiting the jurisdiction of justices is founded on public policy, and no manipulation of a debt can affect such jurisdiction; that the limitation by law cannot be changed by one, or by both of the parties, and such efforts have been held to be *in fraudem legis;* and that the views in the case of *Hutson* v. *Lowry* are founded upon the soundest principles of public policy, and are within the plainest terms of the law." In that case, also, the writ of prohibition was awarded.

In all the cases to which our attention has been called, the remedy resorted to has been the writ of prohibition, sued out by the debtor. In the case before us, the question is raised by an exception to a commissioner's report, interposed by a subsequent judgment creditor, and not by the debtor; and the appellant, Adams, was brought before the court by a rule to show cause, entered at the instance of a purchaser of real estate, who desired to protect his title.

Mr. Minor, Part 1, Vol. IV., p. 219, in treating of the ·

subject, says that where an entire claim exceeds $20, and has been divided into several parts, each not exceeding $20, and separate securities are taken therefor, and all are due, it seems the better opinion that courts of record cannot thus be deprived of their jurisdiction, nor the defendant of his right to trial by jury, and that a writ of prohibition will be awarded by the Circuit Court in order to prevent the usurpation. So, also, it may be remarked, a prohibition will be awarded if a justice of the peace in any case usurp an illegal jurisdiction, as by taking cognizance of a controversy involving the title to a freehold, etc., or by transcending otherwise his lawful cognizance.

But in every case cited, and in all the text-writers consulted, it appears that the attack upon the judgment must be made by means of a writ of prohibition, and by the party who has been aggrieved. Where the proper remedy by prohibition has been resorted to, the relief is granted upon the ground that the jurisdiction usurped by the justice is a fraud upon the jurisdiction of courts of record, by which a defendant may be deprived of his right to a trial by jury, and of his right to an appeal, or writ of error.

Suppose the same thing had been done in a court of record, and that, instead of instituting one suit upon this debt of $380.30, it had been divided with the assent of the debtor into four parts, and separate suits brought upon each at the same time in the Circuit Court. It would have been a manifest wrong to the defendant to vex him with costs in four suits instead of one, but it would not have constituted a ground for a plea in abatement, nor in bar, and the debtor's remedy would have been to ask the court to consolidate the actions. If, however, this were not done, and the court proceeded to judgment in each case, it cannot be doubted that the judgments would be valid.

It savors of refinement to say that there has been in this case

a fraud upon the jurisdiction of the court for which the party proceeding before the justice should be condemned to lose his debt. If there has been a fraud committed, who has been defrauded? The defendant, if any one, and he is not complaining. The whole proceeding was taken with his knowledge and consent. It deprived him of no right. It imposed upon him no penalty. He was content, and perhaps preferred to be sued before a justice, rather than to incur the greater cost attending litigation in courts of record.

Suppose that he were at this day to ask for a writ of prohibition, should it be awarded? Would not the courts say to him, "You have slept upon your rights. The act of which you complain was committed in 1897. You have stood by without objection and seen rights accrue which would render it an act of injustice at this late day to disturb those judgments. Had you been vigilant you would have been awarded the writ, but you have slept upon your rights, and justice to others now requires that it should be denied." Can it be doubted that such would be the decisions if Vandegrift had at the date of this decree applied for a writ of prohibition against Adams with respect to these judgments? We think not. And that consideration alone should be conclusive of the controversy.

This result will not in any degree impinge upon the maxim that consent cannot give jurisdiction. The justice had jurisdiction over the amount represented in each of these judgments. Had he undertaken to give a judgment in excess of his jurisdiction, that judgment would have been void. The question here is whether those not parties to the judgment may, after a lapse of years, introduce evidence of collateral facts, the effect of which, if properly pleaded in due time, would have prevented the judgment from being rendered, or would have avoided it after it was rendered if presented in a petition for a writ of prohibition. The real point is not that the justice did not have

jurisdiction of the matter of which he took cognizance, but that he acquired that jurisdiction by what is denominated a fraud upon the law. That view of the question we have already treated.

Upon the whole case, we are of opinion that so much of the decree of the Circuit Court as denies to Adams the right to participate in the distribution of the purchase money of the property sold to Burruss is erroneous, and should be reversed.

*Reversed.*