# Staunton

MARY F. FENTRESS, ET ALS. v. S. HENRY PRUDEN.

September 11, 1946.

Record No. 3075.

Present, All the Justices.

462

The opinion states the case.

*Preston P. Taylor*, for the appellants.

*E. L. Beale*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

S. Henry Pruden, on March 18, 1927, executed two notes payable to John Fentress, one in the sum of $300 due six months after date, and the other in the sum of $335 due three months after date. On January 8, 1931, Fentress obtained a judgment on each note for $300 against Pruden. Executions were issued and returned "No effects." The judgments were duly docketed but no further action was taken until February, 1945, when the judgment debtor, S. Henry Pruden, instituted this suit against the heirs at law and next of kin of John Fentress, praying that the judgments be declared null and void.

The case was heard on the bill, answers and stipulation of parties. The stipulation stated that Pruden did not make the payment of $35 as credited on the back of the $335 note, and he did not know whether Scott, who was the original debtor, made the payment to Fentress. The trial court entered a decree declaring that the judgments were null and void and ordering them to be so marked on the judgment lien docket. From that decree defendants obtained this appeal.

Appellants' first contention is that appellee has failed to prove that a fictitious credit of $35 was made on the note for the purpose of perpetrating a legal fraud by obtaining jurisdiction of the justice of the peace; and that, even if the credit was made without an actual payment, the creditor had a right to release a part of his claim in order to bring it within the jurisdiction of an inferior court.

No evidence was introduced. The stipulation of counsel to the effect that Pruden did not make the payment

is not sufficient in itself to establish the fact that the creditor did not receive the $35 from Scott, who it is alleged first incurred the indebtedness. The general rule is that in civil actions the amount demanded by the summons determines the justice's jurisdiction and that a plaintiff has a right to release a part of his claim in order to bring it within the jurisdiction of an inferior court.

This rule is stated in 14 Am. Jur. 416 thus: "It is generally declared that the limitation by a plaintiff of his claim in the *ad damnum* clause of his complaint to a sum within the jurisdiction of the court in which he brings his action operates per se as a remittance of whatever may be due in excess thereof. * * * . A number of the earlier cases, however, deny all power on the part of the plaintiff to affect jurisdiction by remission or voluntary credits. But that rule has been changed by statute or otherwise in a number of the states, although some of them still cling to it."

The same thing is said in 31 Am. Jur. 738. See Michie's West Virginia Code of 1937, sec. 4926, and annotations thereunder; 1 C. J. S. 1310 and cases cited in footnotes.

The facts in *Jones* v. *Morris Plan Bank*, 168 Va. 284, 191 S. E. 608, were that Jones purchased from Parker a Plymouth sedan for $595. Part of this sum was paid in cash. The balance, $428, was secured by a conditional sales contract and evidenced by twelve monthly installment notes of $35.70 each. The contract provided that, on the failure to pay any one of the notes, the total amount should become due and payable. Two of the notes were not paid at maturity. The Morris Plan Bank, as an assignee of Parker, obtained judgment on the two notes for $71.40. This judgment was paid. Later, the bank surreptitiously obtained possession of the Plymouth car. Jones instituted an action for the conversion of his automobile. The bank defended on the ground that Jones' title to the car was conditioned upon his payment of all the notes and that he had not paid them. It was held that the defendant, by bringing an action on two notes only when all of them were due, was barred from

demanding payment on the other notes as the conditional sales contract constituted one entire indivisible claim. Mr. Justice Gregory, who delivered the opinion of the court, cited and applied the general rule as stated in 1 C. J. S. 1308 and 1309.

There are expressions by way of *obiter dicta* in several Virginia decisions* which would indicate that this court favors the rule denying a creditor the right to voluntarily reduce his claim to an amount that would bring it within the jurisdiction of the justice's court. However, it is to be remembered that this suit is an attack upon the judgments in question and not an attack in the justice's court before final judgment was rendered, as is generally the case.

If the $35 credit was fictitious, the appellee, if he had appeared before the justice, could have had the case removed to the circuit court, a trial by jury, and even the right to present a petition for a review to this court from a hostile judgment in the circuit court. Under these circumstances, we think there exists no substantial reason to deny the plaintiff, in the proceedings before the justice, a right to voluntarily release $35 of his claim, and we so hold.

Appellants' second contention presents the principal question—that is, whether a defendant, by his failure to appear and make timely objection to the plaintiff's splitting his cause of action in the justice's court, is presumed to have waived such defense.

The general rule is that a creditor cannot split an entire indivisible claim so as to give a justice's court jurisdiction that it would not otherwise possess. 31 Am. Jur. 738; 35 C. J. 523. If the record of such a court shows on its face that the amount of the claim is not within the jurisdiction of the justice's court, then any judgment entered for such claim is null and void and subject to collateral attack. 35 C. J. 551. If the question of such jurisdiction is dependent upon matters *dehors* the record, then it becomes the duty of the justice to hear evidence for the purpose of

*Hutson* v. *Lowry*, 2 Va. Cas. (4 Va.) 42; *James* v. *Stokes*, 77 Va. 225; and *Adams* v. *Jennings*, 103 Va. 579, 49 S. E. 982.

determining whether he has jurisdiction to hear the cause on its merits. If a justice, having heard such evidence, determines that he has jurisdiction, his decision on the point is subject to review on appeal but his judgment on the merits is not open to collateral attack. 35 C. J. 551.

■ This court held, in *Berry* v. *Smith*, 148 Va. 424, 429, 139 S. E. 252, 55 A. L. R. 279: "It is well settled that, where facts essential to give jurisdiction to an inferior or special tribunal of limited authority are shown by its record, the same presumption prevails in favor of its jurisdiction as prevails in favor of the jurisdiction of superior courts of general jurisdiction, and the statement of jurisdictional facts cannot be denied upon collateral attack."

This principle was restated and applied in *Penick* v. *Ratcliffe*, 149 Va. 618, 140 S. E. 664.

The record of the proceedings before the justice of the peace reveals the following facts: (1) That a separate warrant was issued on each of the two notes, maturing at different times, claiming $300 to be due on each note, the maximum amount within the jurisdiction of the justice; (2) that the warrants were served upon the wife of the defendant and their contents explained to her; (3) that the officer made a return of the warrants; and (4) that the judgment entered on each of the warrants was for an amount within the jurisdiction of the justice. Thus both judgments appear to be valid upon their face and the amount in each *ad damnum* clause and the amount of each judgment was within the jurisdiction of the justice.

■ ■ In order to overcome the regularity and validity of the judgments on their face, it became necessary for the plaintiff in the trial court to allege matters *dehors* the record—to-wit, that the two notes were given for one entire indivisible claim. This allegation is not established by evidence. The answer of defendants to this allegation was that they were not in a position to deny or affirm the same and hence they "called for strict proof thereof." No proof was offered. However, the parties apparently have pro-

ceeded on the assumption that the allegation was true. Even so, it is generally held that the rule prohibiting the splitting of causes of action is for the benefit of the defendant. It exists for his protection and is intended to suppress serious grievances, to prevent vexatious litigation and to avoid the costs and expenses incident to numerous suits on the same cause of action. " * * * , he may waive or renounce its benefits by either expressly or impliedly consenting to the institution of separate actions on a single demand or cause of action, and such a waiver will be presumed unless timely and proper objection is made." 1 C. J. S. 1312. See 1 Am. Jur. 484; *Georgia Ry., etc., Co.* v. *Endsley,* 167 Ga. 439, 145 S. E. 851, 62 A. L. R. 257, and note 263.

In *Erie R. Co.* v. *Callahan Co.,* 204 Ind. 580, 184 N. E. 264, 87 A. L. R. 778, at page 780, it was said: "The object of the rule against splitting causes of action is to prevent repeated litigation, protect the defendant from unnecessary vexation and the costs and expenses incident to numerous suits. It arose, not as an original legal right of the defendant, but as an interposition of courts to prevent multiplicity of suits upon principles of public policy."

These principles were applied in *Jones* v. *Morris Plan Bank, supra,* by Mr. Justice Gregory, who concluded his discussion of the question by stating: "The general rule established in Virginia is the same as that prevailing in the majority of jurisdictions."

Appellee concedes that the rule and the reasons therefor are as stated, but he contends that this court has not applied the rule to judgments obtained before justices of the peace. The substance of his contention is that two or more judgments obtained before a justice of the peace are void if the claim upon which they are based, though evidenced by different past due notes, represents one obligation and the total claim exceeds the jurisdictional amount cognizable by a justice of the peace.

The following cases are cited to support this contention: *Hutson* v. *Lowry,* 2 Va. Cas. (4 Va.) 42; *James* v. *Stokes,* 77 Va. 225; *Adams* v. *Jennings,* 103 Va. 579, 49 S. E. 982.

The facts in *Hutson* v. *Lowry, supra,* decided in 1816, were that John Hutson owed Joseph Lowry $80 and, as evidence of that debt, he executed to Joseph Lowry four bonds of $20 each, maturing at different dates. After the last bond became due, Lowry obtained four judgments of $20 each before a justice of the peace. Executions were issued and part of the sums paid to the sheriff. Six of the nine judges of the General Court held that the justice had no jurisdiction to enter the judgments and that a writ of prohibition should issue. This decision seems to have been based upon the following grounds: (1) The creditor, by choosing to sever the indivisible claim, deprived the debtor of the benefit of counsel, who were not admitted, nor their fees noticed, before a single justice; (2) the defendant was thereby denied the benefit of a trial by jury; and (3) the creditor, by such proceedings, might deny the debtor the right to a writ of error or appeal to the Supreme Court.

Brockenbrough, Parker and Saunders dissented on the following grounds: (1) Because the debtor by his own act had severed the debt and given notes and bonds maturing at different dates. By so doing, he did not confer jurisdiction by consent, but, by consenting to the severance of the debt, it follows that the justice had jurisdiction of each note as it matured as a matter of course. (2) If the justice had jurisdiction on each note or bond as it matured, he should not lose such jurisdiction simply because the plaintiff chose to indulge the defendant by postponing any action until all the notes or bonds fell due.

The opinions are not reported in full. Summaries of the arguments and the conclusion of the court were stated rather briefly. Mr. Minor, in commenting on this case, said: "Where an entire claim exceeds $20, and has been divided into several parts, *each not exceeding* $20, and separate securities are taken therefor, and all are due, it seems the *better* opinion in this case that the courts of record cannot thus be deprived of their jurisdiction, *nor the defendant of*

*his right to trial by jury.*" (Italics supplied.) Minor's Institutes, vol. IV, part 1, p. 206.

Mr. Minor emphasizes the fact that, if the total claim is divided into sums which do not exceed $20, then the defendant is deprived of a trial by jury.

The reasons advanced by the General Court in *Hutson* v. *Lowry, supra,* are not applicable to the case now under consideration because attorneys were permitted to practice before a justice of the peace at the time these judgments were rendered and continued to so practice until that court was superseded by the trial justice court. Under the procedure in force at the time these judgments were entered, defendant had a right to appear before the justice and ask for removal of the cause, or, after judgment was obtained, he could have appealed to the circuit court. Litigants do not have the privilege of having their cases reviewed by the Supreme Court as a matter of right. The Legislature of Virginia, by different acts enlarging the powers of the justice of the peace, and giving litigants the right to removal and the right to appeal, and by other progressive measures, has removed the reasons upon which the case of *Hutson* v. *Lowry, supra,* was based. The reasons that breathe life and vitality into the rule having been eliminated, the rule itself should be permitted to die a peaceful death.

The identical question was again before this court in *James* v. *Stokes* (1883), *supra.* Stokes was indebted to James in the sum of $126.73, for which debt he executed three notes for $42.24 each, due 60 days, 90 days and 4 months after date. After all three notes had matured, Stokes obtained before the justice of the peace a separate judgment on each note. Executions were issued and part of the debt collected. Within two years thereafter James applied for a writ of prohibition, which was awarded. The majority of the court held that the decision in *Hutson* v. *Lowry, supra,* was binding. However, Judge Richardson filed a strong dissenting opinion in which he pointed out that in 1816, when *Hutson* v. *Lowry, supra,* was decided, the law regulating the jurisdiction of the justice of the peace was

quite different from what it was in 1883, when the case then under consideration was determined. He also stated that, for the convenience and necessity of the people of the Commonwealth, a cheaper and more speedy method of settling the great mass of small claims had been adopted by the Virginia Legislature, thereby increasing the jurisdiction of the justice of the peace court. He further said: "Let us, then, look to the case of *Hutson* v. *Lowry, supra*, before referred to, and if it does not give countenance to said judgment, then there is no warrant therefor in Virginia. In that case the creditor's claim was eighty dollars, and he *split it up* into four claims of twenty dollars each; and thereby, it is palpable that he would, but for the intervention of the superior court, have ousted it, not only as to the original debt of $80, but also of each part, when so split up. The several bonds here were each for a sum within the jurisdiction of the circuit court, and could have been sued on in that court separately, subject only to the discretionary power vested therein, of consolidating them. So, in this case each of the bonds was within the prescribed jurisdiction of the justice, subject only to the limitation in favor of the right of trial by jury, by which the debtor, each claim exceeding twenty dollars, had by statute the right to have each case removed to the county court—a court of record—where, by statute, he could demand and have a jury to try each case."

The same question arose in 1905 in *Adams* v. *Jennings, supra*, the facts in which were that Vandegrift owed Adams $380.30, the price of timber purchased from Adams. After the claim became due, Adams sent it to a constable of Campbell county for collection. The constable, without consulting Adams, permitted Vandegrift to execute four notes, three for $100 each and the fourth for $80.30, all maturing at different dates. After the last note had matured, a judgment was obtained on each note before a justice of the peace. The judgments were duly docketed. Later, a suit was brought to sell land owned by Vandegrift. Burruss, the purchaser, refused to comply with the terms of

sale until the four judgments against Vandegrift had been released of record. Thereupon Adams was made a party to the cause. Adams appeared and stated the foregoing facts. Vandegrift made no defense to the judgments. The trial court held that the judgments were void. On review of that decision, in an opinion by Judge Keith, the cases of *Hutson* v. *Lowry, supra,* and *James* v. *Stokes, supra,* were reviewed at some length. It was held that the attack upon the judgments must be made by the party aggrieved. It was stated: "Where the proper remedy by prohibition has been resorted to, the relief is granted upon the ground that the jurisdiction usurped by the justice is a fraud upon the jurisdiction of courts of record, by which a defendant may be deprived of his right to a trial by jury, and of his right to an appeal, or writ of error.

&#42; &#42; &#42;

"It savors of refinement to say that there has been in this case a fraud upon the jurisdiction of the court for which the party proceeding before the justice should be condemned to lose his debt. If there has been a fraud committed, who has been defrauded? The defendant, if any one, and he is not complaining. The whole proceeding was taken with his knowledge and consent. It deprived him of no right. It imposed upon him no penalty. He was content, and perhaps preferred to be sued before a justice, rather than to incur the greater cost attending litigation in courts of record.

"Suppose that he were at this day to ask for a writ of prohibition, should it be awarded? Would not the courts say to him, 'You have slept upon your rights. The act of which you complain was committed in 1897. You have stood by without objection and seen rights accrue which would render it an act of injustice at this late day to disturb those judgments. Had you been vigilant you would have been awarded the writ, but you have slept upon your rights, and justice to others now requires that it should be denied.' Can it be doubted that such would be the decision if Vandergrift had at the date of this decree applied for a writ of

prohibition against Adams with respect to these judgments? We think not. And that consideration alone should be conclusive of the controversy."

While the facts in the three cases were not identical, the decision in *Adams* v. *Jennings, supra,* in effect overruled the decisions in *Hutson* v. *Lowry, supra,* and *James* v. *Stokes, supra.* We have been cited to no case since the publication of Judge Keith's opinion in *Adams* v. *Jennings, supra,* in which the facts were at all similar to the facts now under consideration. However, *James* v. *Stokes, supra,* and *Hutson* v. *Lowry, supra,* were cited in the following cases: *Martin* v. *Richmond,* 108 Va. 765, 62 S. E. 800; *Phillips* v. *Portsmouth,* 112 Va. 164, 70 S. E. 502; and *Chesapeake, etc., Ry. Co.* v. *Williams,* 122 Va. 502, 95 S. E. 417. It will be noted that in each case the question of the jurisdiction of the justice of the peace or the splitting of the cause of action was timely and properly raised before final judgment was entered.

The two judgments now under consideration appear to be regular and valid upon their face. The judgment debtor had knowledge of the fact that the warrants were pending. He made no appearance and no defense. The debt is just and unpaid. The judgment debtor had waited more than 14 years to make this attack. In the meantime, John Fentress, the payee named in the notes, and J. O. Scott, for whose obligation it is alleged the debt was contracted, have died, hence their testimony is no longer available, and other rights have intervened. If the prayer of the bill be sustained, no other action on the notes can be maintained as the statute of limitations may be plead in bar. The judgment debtors, in the cases cited, filed their petitions for writs of prohibition and obtained their relief before the period of limitation barred action upon the notes. Hence the judgment creditors had the right to have their respective cases heard on the merits in the proper forum.

Under all the facts and circumstances, we think that the principles stated in *Adams* v. *Jennings, supra, Berry* v. *Smith, supra,* and *Jones* v. *Morris Plan Bank, supra,* which

are in accord with the trend of modern decisions, should be applied rather than the rule of thumb announced in *Hutson* v. *Lowry, supra,* and followed in *James* v. *Stokes, supra.*

The decree is reversed and the case dismissed.

*Reversed and dismissed.*