334

## ARCHIE ELLIOTT, JR., JUDGE, ETC.

### v.

## GREAT ATLANTIC MANAGEMENT CO., INC., T/A, ETC.

Record No. 860887

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and
Gordon, Retired Justice

*Neil A. G. McPhie, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General*, on briefs), for appellant.

*B. M. Millner (Jimese Pendergraft; Jones, Blechman, woltz & Kelly*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this appeal, we decide whether a circuit court erred by issuing a writ of prohibition against a general district court judge in connection with action taken by the judge in the course of adjudicating civil cases.

Appellee Great Atlantic Management Company, Inc., trading as Great Atlantic Agency, filed in the trial court a petition and amended petition for a writ of prohibition against appellant, the Honorable Archie Elliott, Jr., Judge of the General District Court of the City of Portsmouth. The petitioner sought a writ of prohibition and other relief against the respondent arising from the judge's rulings in 30 unlawful detainer actions pending in the district court during March, April, and May 1986.

The petitioner owned and managed apartment complexes in Portsmouth. Judge Elliott sits as a judge of the civil division of the City's General District Court. Petitioner alleged that, during the time in question, a number of tenants in each of the apartment complexes failed to pay rent when due as provided in the applicable lease agreements. Following service of "Pay or Quit Notices," the allegations continued, the petitioner retained counsel, and unlawful detainer actions were filed in the district court seeking possession of the respective demised premises and a money judgment in each case. The judgment sought included the base rent due for the applicable month, any late charges due, reasonable attorney's fees, court costs, and interest, all as provided for under the lease and by the Virginia Residential Landlord and Tenant Act, Code §§ 55-248.2 through -248.51 (hereinafter, the Act). Petitioner further asserted that when counsel filed the actions and delivered the papers to the proper sheriff for service of process, it had incurred or paid an attorney's fee of $25 for each delinquent tenant's case which was referred to counsel for collection of rent.

The petitioner further alleged that many tenants, after receipt of the suit papers, wished to make voluntary payment of all amounts due to cure their default so they could remain in possession of the premises. When such payment was offered, the allegations continue, the petitioner agreed to dismiss or nonsuit the action and to allow the tenant to remain in possession, provided the tenant paid the base rent, late charges, a sum of $25 for attorney's fees, plus costs of filing and serving the pleadings.

On the return dates of the unlawful detainer actions, the petitioner appeared by counsel before Judge Elliott to seek judgment against the delinquent tenants and to nonsuit or dismiss the actions against the tenants who had paid the total amounts due. The judge routinely entered judgments as appropriate against delinquent tenants. The judge ruled, however, that nonsuits would be granted in cases where payment voluntarily had been made upon

condition that the amounts collected for attorney's fees be deposited with the court for return to the individual tenants who had made the payments. The judge, relying on the Act, stated he had authority to supervise collection of attorney's fees and to order the repayment because the cases were pending before him when they were settled.

Petitioner's counsel objected to the alleged unwarranted intrusion by the court into a voluntary settlement made with persons who were not under any legal disability. The judge then ordered that the amounts be paid into court by counsel and that, if the sums were not paid by a deadline, the attorney would be held in contempt of court, fined, and jailed. Sums representing the attorney's fees in 24 of the cases were paid into court under protest and are being held by the court pending the outcome of this litigation. The other six nonsuited cases were "appealed" to avoid a contempt citation and the sums were not required to be paid into court, according to a modified procedure employed by the judge in those cases.

The relief sought by the petitioner in the circuit court included a request that a writ be awarded prohibiting the respondent "from denying petitioner's right to receive and retain the disputed rent amounts." In addition, the petitioner sought an order directing Judge Elliott to return to the petitioner the 24 checks and, further, that the judge be directed to discontinue the challenged practice in the future.

The circuit court reviewed the pleadings, transcripts of the pertinent unlawful detainer hearings before Judge Elliott, copies of the district court docket relating to those cases, copies of the pleadings in the unlawful detainer actions, a copy of the form lease employed by the petitioner, and argument of counsel. The court below ruled that a writ of prohibition be awarded against Judge Elliott "requiring the return to Petitioner's counsel of all reimbursement checks being held" with respect to the unlawful detainer actions in issue.

The circuit court, in a written opinion, decided that issuance of a writ of prohibition was an appropriate remedy. The court proceeded to note that a plaintiff "has an absolute right to non-suit a case once" and that a court may not preclude a plaintiff "from taking a non-suit or impose conditions on this right." The court further ruled that "Judge Elliott clearly exceeded his jurisdiction, power and authority in allowing the petitioner his right to non-

suits only upon the condition it refunded attorneys fees to tenants who agreed to pay these fees and in fact had paid them." The court also stated, "As commendable as Judge Elliott's motives may have been, he had no right to intercede in or interfere with private settlements of disputes." We awarded the judge this appeal from the June 1986 order of the circuit court.

 At the threshold, we must decide whether issuance of a writ of prohibition was an appropriate remedy under these circumstances. The Attorney General, on behalf of Judge Elliott, contends that it was not. We agree.

A writ of prohibition is an extraordinary remedy employed "to redress the grievance growing out of an encroachment of jurisdiction." *James v. Stokes*, 77 Va. 225, 229 (1883). Prohibition properly issues from a superior court to a subordinate court commanding the lower court "to cease from the prosecution of a suit, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." *Id.*

 A writ of prohibition may not be used for the correction of errors. *In Re: Dept. of Corrections*, 222 Va. 454, 461, 281 S.E.2d 857, 861 (1981). If a subordinate court has jurisdiction of the subject matter of the controversy, jurisdiction of the parties, and the amount in dispute is within the monetary limits of the court's power, a mistaken exercise of that jurisdiction does not justify resort to the remedy of prohibition. In other words, the writ of prohibition does not lie to prevent the lower court from adjudicating erroneously. *County School Board v. Snead*, 198 Va. 100, 107, 92 S.E.2d 497, 503 (1956), *citing Grigg v. Dalsheimer*, 88 Va. 508, 510, 13 S.E. 993, 994 (1891). "If the court or judge has jurisdiction to enter any order in the proceeding sought to be prohibited, the writ does not lie." *Grief v. Kegley*, 115 Va. 552, 557, 79 S.E. 1062, 1064 (1913). *See Fidelity & Deposit Co. v. Beale*, 102 Va. 295, 303, 46 S.E. 307, 308 (1904).

Great Atlantic contends that it "had the right and privilege to have the unlawful detainer actions nonsuited or dismissed without any conditions being imposed" by the district judge. It also contends that nothing in the Act governing relations among landlords and tenants "prevents voluntary settlements . . . which include tenants reimbursing landlords for attorney's fees incurred." Therefore, the argument continues, Judge Elliott exceeded his "jurisdiction" and entry of the writ was proper.

■ We do not agree that the judge exceeded his jurisdiction. Without question, the district court and the judge had jurisdiction over the subject matter, the parties, and the amount in dispute in the unlawful detainer actions. Without question, the court had the power to enter orders in the proceedings.

■ The present controversy purely and simply is over the legal correctness of the judge's supervision of attorney's fees collected from tenants. Given the scope of the Act, including the extent of potential court control which the General Assembly has authorized over the landlord-tenant relation generally, and over the collection and reasonableness of attorney's fees due from defaulting tenants specifically, this is a debatable matter. We express no opinion whatever on the underlying legal question.

■ The judge may be correct, even in case of a voluntary settlement and request for nonsuit, in his reliance on the Act to empower him to supervise collection of attorney's fees under § 55-248.31. (If tenant's noncompliance with rental agreement is willful, landlord may recover "reasonable attorney's fees." Failure to pay rent or vacate premises under certain circumstances deemed "willful," unless failure is found by court to be "reasonable.") Great Atlantic, on the other hand, may be correct, as the circuit court found, that the Act does not affect a plaintiff's right to enter into voluntary settlements with parties not under legal disabilities and to have a pending action nonsuited under the applicable statute, Code § 8.01-380, without interference by the court. Whatever the ultimate answer may be to this underlying question, the district judge's error, if any, may not be adjudicated in a prohibition proceeding.

Consequently, the order appealed from will be reversed and the petition for prohibition, as amended, will be dismissed.

*Reversed and dismissed.*

GORDON, Retired Justice, concurring in result.

The correctness of the general district court's action is not, in my opinion, fairly debatable.

Under federal practice a court, in granting a motion for voluntary dismissal, may impose such terms and conditions as it sees fit. Fed. R. Civ. P. 41(a)(2). No statute or rule grants a Virginia court the authority to impose terms and conditions.

The general district court therefore had only one proper course of action. It should have dismissed the action, without more.

Reluctantly, I agree that the general district court had jurisdiction to commit error. Prohibition therefore does not lie.

RUSSELL, J., joins in concurring opinion.