Present:  All the Justices

THE HONORABLE A. ELISABETH OXENHAM,
JUDGE OF THE JUVENILE AND DOMESTIC
RELATIONS DISTRICT COURT OF HENRICO COUNTY

v.  Record No. 980437  OPINION BY JUSTICE CYNTHIA D. KINSER
                                           June 5, 1998
J.S.M., ETC., ET AL.

                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                         James E. Kulp, Judge


     On January 9, 1998, the Circuit Court of Henrico

County issued a writ of prohibition against the Honorable

A. Elisabeth Oxenham, Judge of the Juvenile and Domestic

Relations District Court of Henrico County (Judge Oxenham).

Under the terms of the circuit court's order, Judge Oxenham

could not prevent Robert H. Martin (Robert) from retaining

an attorney to represent his minor son on a petition

charging assault and battery filed by the child's mother.

The dispositive issue in this appeal is whether Judge

Oxenham had jurisdiction to adjudicate the disposition of

the petition and, in doing so, had authority to appoint

counsel to represent the child.  We conclude that she had

both the jurisdiction and authority to act and will,

therefore, reverse the judgment of the circuit court.

                              I.

     On August 18, 1997, Olivia Lee Ligon Martin (Olivia)

filed a petition against J.S.M.,[1] her ten-year-old son,

alleging that he committed assault and battery against her

on July 2, 1997, in violation of Code § 18.2-57.2.  At the

initial hearing on the petition before Judge Oxenham, a

dispute arose between the parents regarding who should

represent J.S.M. on the pending assault and battery charge.

At that time, J.S.M.'s parents were involved in divorce and

custody proceedings.  Olivia had sole custody of J.S.M.,

and Robert's visitation rights with J.S.M. had been

temporarily suspended.  Robert stated that he had retained

the counsel representing him in the divorce proceedings to

defend J.S.M.  Olivia, however, wanted the attorney

representing her in the divorce case to serve as her son's

counsel or, in the alternative, to have the court appoint

an attorney for J.S.M.[2]  The issue of legal representation

for J.S.M. remained unresolved at the conclusion of the

hearing.

On October 31, 1997, J.S.M., individually and by his

next friend, Robert, filed a motion requesting Judge

Oxenham to recuse herself from hearing the pending petition

---

[1]  Full name of the minor deleted by this Court.

[2]  Olivia's attorney later wrote Judge Oxenham and
stated that due to his involvement in the pending divorce
proceedings between Robert and Olivia, he could not
represent J.S.M.

against J.S.M. or, in the alternative, to permit Robert to choose counsel for J.S.M.  In a November 6, 1997 letter opinion, Judge Oxenham denied the motion and appointed defense counsel and a guardian ad litem for J.S.M.  Judge Oxenham based her decision on the unusual degree of animosity between J.S.M.'s parents and on Olivia's request for the court to appoint an attorney to represent J.S.M. since she could not afford to retain counsel for him. Judge Oxenham concluded that it was in J.S.M.'s best interests to have a court-appointed defense attorney as well as a guardian ad litem.

In response to Judge Oxenham's decision, Robert and J.S.M. filed a petition for a writ of mandamus in the circuit court.[3]  The petition requested, inter alia, the court to compel Judge Oxenham to allow Robert to select his son's counsel.  The circuit court held a hearing on the matter during which J.S.M.'s guardian ad litem stated that he had not asked J.S.M. whether he preferred to have a court-appointed attorney or private counsel.  However, the guardian ad litem stated that J.S.M. did not "express . . . to me an opposition" to his court-appointed attorney and

_____

[3]  The petition for a writ of mandamus was filed by Robert, individually, and by J.S.M., individually and by his next friend Robert.

3

"appeared to be pleased" with his current legal representation.  At the conclusion of the hearing, the court stated that it "[was] going to treat the petition for mandamus as a petition for writ of prohibition."  The court then granted the writ of prohibition.  Judge Oxenham filed a motion to reconsider, which the circuit court denied. Judge Oxenham appeals.

II.

The law concerning writs of prohibition is well-established and provides the framework for deciding this case.  "A writ of prohibition is an extraordinary remedy employed 'to redress the grievance growing out of an encroachment of jurisdiction.'"  Elliott v. Great Atlantic Management Co., Inc., 236 Va. 334, 338, 374 S.E.2d 27, 29 (1988) (quoting James v. Stokes, 77 Va. 225, 229 (1883)). In Grief v. Kegley, 115 Va. 552, 79 S.E. 1062 (1913), we stated the well-settled principle that:

> [T]he writ of prohibition does not lie to correct error, but to prevent the exercise of the jurisdiction of the court by the judge to whom it is directed, either where he has no jurisdiction at all, or is exceeding his jurisdiction.  If the court or judge has jurisdiction to enter any order in the proceeding sought to be prohibited, the writ does not lie.

Id. at 557, 79 S.E. at 1064; see also Elliott, 236 Va. at 338, 374 S.E.2d at 29; In re Department of Corrections, 222 Va. 454, 461, 281 S.E.2d 857, 861 (1981); County School Bd.

4

of Tazewell County v. Snead, 198 Va. 100, 107, 92 S.E.2d 497, 503 (1956).

Jurisdiction is "'the power to adjudicate a case upon the merits and dispose of it as justice may require.'" Id. at 104-05, 92 S.E.2d at 501 (quoting Southern Sand and Gravel Co., Inc. v. Massaponax Sand and Gravel Corp., 145 Va. 317, 332, 133 S.E. 812, 816 (1926) (Burks, J., concurring)); see also Black's Law Dictionary 853 (6th ed. 1990). Accordingly, a writ of prohibition does not lie against Judge Oxenham if she had jurisdiction to adjudicate the disposition of the petition charging J.S.M. with assault and battery, and in doing so, had authority to appoint counsel to represent him. We find that Judge Oxenham acted within her jurisdiction and that the circuit court, therefore, erred in issuing the writ of prohibition.

Under Code § 16.1-241(J), the juvenile and domestic relations district court has exclusive original jurisdiction over "[a]ll offenses in which one family or household member is charged with an offense in which another family or household member is the victim . . . ." The court also has exclusive original jurisdiction regarding the disposition of a child who is alleged to be

delinquent.[4]  Code § 16.1-241(A)(1).  In regard to the appointment of counsel for a child charged with a delinquent act, Code § 16.1-266(B) provides as follows:

> Prior to the detention review hearing or the adjudicatory or transfer hearing by the court of any case involving a child who is alleged to be . . . delinquent, such child and his or her parent, guardian, legal custodian or other person standing in loco parentis shall be informed by a judge, clerk or probation officer of the child's right to counsel . . . and be given an opportunity to:
>
> 1. Obtain and employ counsel of the child's own choice . . . .[5]

Finally, subsection D of Code § 16.1-266 provides that "[i]n all other cases which in the discretion of the court require counsel or a guardian ad litem to represent the interests of the child . . . , a discreet and competent attorney-at-law may be appointed by the court."

As a judge of the juvenile and domestic relations district court, Judge Oxenham clearly had jurisdiction under Code § 16.1-241 to adjudicate the disposition of the petition charging J.S.M. with assault and battery.  In

---

[4]  A "delinquent act" means "an act designated a crime under the law of this Commonwealth . . . ."  Code § 16.1-228.

[5]  Subsection B(2) of Code § 16.1-266 provides that if a child is indigent, a statement of indigence and a financial statement shall be filed, and the court shall appoint an attorney to represent the child.  A third

doing so, Judge Oxenham also had authority under Code § 16.1-266 to appoint counsel to represent J.S.M. Exercising the discretion granted her in Code § 16.1-266, Judge Oxenham correctly concluded that J.S.M.'s age as well as the open animosity between his parents prevented J.S.M. from choosing his own counsel. At that time, J.S.M.'s parents were still embroiled in divorce and custody proceedings, and Robert's visitation rights had been temporarily suspended. Furthermore, J.S.M.'s parents could not agree on an attorney to represent their son. Given these ongoing conflicts, Judge Oxenham determined that it was in J.S.M.'s best interests to be represented by an attorney who was not involved in the legal proceedings between his parents. Cf. Stanley v. Fairfax Co. Dep't of Soc. Services, 10 Va. App. 596, 601, 395 S.E.2d 199, 202 (1990), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991) (recognizing that rights of child are often separate and distinct from those of other parties to litigation and are best protected by independent counsel).

Nevertheless, Robert and J.S.M. argue that Judge Oxenham did not follow the necessary procedural steps for appointing counsel under Code § 16.1-266 and thus violated

_____

alternative is waiver of the right to be represented by an attorney. Code § 16.1-266(B)(3).

7

J.S.M.'s Sixth Amendment right to counsel guaranteed by the United States Constitution. They contend that Judge Oxenham should not have imposed her choice of counsel on J.S.M. without first making an actual finding, after notice and hearing, that a conflict exists between J.S.M. and his father and that J.S.M. is incapable of choosing his own attorney. In other words, they assert that Judge Oxenham had to give J.S.M. and his father the opportunity to obtain and employ counsel of J.S.M.'s own choice before she could appoint an attorney for J.S.M. Thus, according to Robert and J.S.M., Judge Oxenham lost whatever jurisdiction she initially had by preempting J.S.M.'s right to select his attorney.

We disagree with their argument and note that the cases upon which Robert and J.S.M. rely are habeas corpus cases in which we addressed the statutory requirement regarding the appointment of a guardian <u>ad</u> <u>litem</u> for a child who appears in court without representation by either a parent or an attorney. <u>See</u> <u>Pruitt v. Peyton</u>, 209 Va. 532, 535, 165 S.E.2d 288, 290 (1969); <u>Gogley v. Peyton</u>, 208 Va. 679, 682, 160 S.E.2d 746, 748 (1968); <u>Gregory v. Peyton</u>, 208 Va. 157, 160, 156 S.E.2d 624, 625-26 (1967). In each of these cases, we held that the juvenile court's failure to appoint a guardian <u>ad</u> <u>litem</u> for the child

rendered the subsequent proceedings or convictions void. Those cases, however, are not relevant to this appeal since Judge Oxenham did not fail to appoint an attorney to represent J.S.M.  Further, if she omitted any procedural step required by Code § 16.1-266(B) regarding the appointment of counsel for a child charged with committing a delinquent act, such an omission was merely a procedural error and did not result in a loss of jurisdiction.  A writ of prohibition does not lie to correct errors.  Grief, 115 Va. at 557, 79 S.E. at 1064.

For these reasons, we will reverse the judgment of the circuit court and dismiss the writ of prohibition.

Reversed and dismissed.

9