# CIRCUIT COURT OF AUGUSTA COUNTY

Francis Chester et al.

.v.

David R. Beyeler et al.

Case No. CL 09000585-00

Francis Chester et al.

v.

Wanda Jean Shrewsbury,
Commissioner of Revenue

Case No. CL09000266-00

December 28, 2009

BY JUDGE VICTOR V. LUDWIG

This letter opinion separately addresses each of the two cases pending before the Court. In both cases, the sole remaining question is whether Mr. Chester should be sanctioned for filing the suits. Both cases are, therefore, to be considered in light of Code § 8.01-271.1, which provides, in part:

> [E]very pleading . . . shall be signed by at least one attorney of record in his individual name. . . .
> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading . . . (ii) to the best of his knowledge, information, and belief, formed after

reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

Sanctions are not particularly favored in the law, but their purpose is to "to prevent frivolous lawsuits." *Montecalvo v. Johnson*, 17 Va. Cir. 382, 385 (Richmond City 1989). Without attempting to address all of the criteria in Va. Code § 8.01-271.1, one focus must be whether Mr. Chester complied with his certification that, to the best of his knowledge, information, and belief, formed after reasonable inquiry, the pleadings were well grounded in fact and were warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In making that assessment, the Court notes that Mr. Chester is an experienced attorney who has been admitted to the Virginia Bar and has practiced here for many years, so he should have a solid grasp of the law and procedure applicable to cases of this nature.

In *Tullidge v. Board of Supervisors of Augusta County*, 239 Va. 611, 614 (1990), the Virginia Supreme Court held that the trial court is to apply "an objective standard of 'reasonableness' in determining whether the 'warranted by existing law' portion of Code § 8.01-271.1 has been violated." In that case, the Court held that, because Mr. Tullidge, the object of the motion for sanctions, was "an attorney, it must be shown that a competent attorney, after reasonable inquiry, could not have formed a reasonable belief that Tullidge's contention was warranted by existing law. In addition, any doubts should be resolved in favor of Tullidge's contention. However, if it is clear that Tullidge's claim had no chance of success under existing law, his conduct was appropriately punished."

That case articulates the principles that govern the issue in these cases. Here, if Mr. Chester, after reasonable inquiry, could not have formed a reasonable belief that his suit was warranted by existing law, then it is appropriate to sanction his conduct. However, any doubts on that issue must be resolved in Mr. Chester's favor.

### Chester v. Beyeler, Case No. CL 09000585

In this case, Mr. Chester filed suit against each individual member of the Augusta County Board of Supervisors (the Board) and against W. Jean Shrewsbury, the Augusta County Commissioner of the Revenue (the Commissioner). Mr. Chester named himself, in his individual capacity, as plaintiff and purported to represent 10,466 other individuals in "this class action suit."

Later in the pleading, Mr. Chester referred to himself as "attorney for 'Signatories,' consisting of 10,459 attached signatures. . . ." Mr. Chester's authority to act on behalf of the "Signatories" is language in a petition directed to Augusta County stating that, if the petition is not granted, Mr. Chester was authorized to institute suit against the County. (In fact, Mr. Chester did not sue either the County or the Board.) Many of the signatures are illegible, and more than 850 typed names, presumably included in the "Signatories," are listed on a sheet stating that they are from an on-line petition. At the hearing on October 1, 2009, the Commissioner testified, without contradiction that there were 7,950 different signatures on the petitions (recognizing that some of the signatories may have owned more than one parcel of land).

In the suit, Mr. Chester asked that the Court issue a writ of mandamus or a writ of prohibition ordering the individual members of the Board and the Commissioner "to either perform their respective governmental duties or, in the alternative, to prohibit certain actions as . . . set forth" in the pleading. Specifically, Mr. Chester asked that the Court order the defendants to "set aside the 2009 real estate assessments," either to issue "new corrected substantiated assessments in accordance with valuations as per January 1, 2009, or, in the essence of time and costs, to adopt the existing 2005 assessments as assessments as per January 1, 2009," and that they "in their individual capacities pay all costs for this proceeding."

This prayer was based on allegations that the bidding process resulting in a contract with Blue Ridge Mass Appraisal Company, L.L.C. (BRMACP), was improper, that other bidders did not bid because BRMACP had been the successful bidder in years past, that BRMACP did not timely complete the work, that the methodology of appraisal utilized by BRMACP was "prohibited

by the industry," and that BRMACP "violated numerous guidelines public [sic]." Because Mr. Chester has elected to nonsuit his action, none of these matters, which were contested by the County, will be addressed in the context of this suit.

On behalf of the individual defendants and the Commissioner, the County Attorney, Mr. Morgan, filed a motion to dismiss the petition based on procedural grounds and on the assertion that the remedy requested by Mr. Chester was unavailable on his allegations of facts. In addition, the defendants have sought sanctions against Mr. Chester.

Subsequently, Mr. Chester filed a motion to nonsuit the case, and that motion remains under advisement only for the Court to consider the motion for sanctions. The Court took evidence on that matter on October 1, 2009, Mr. Morgan submitted his brief on October 28, and Mr. Chester submitted his response on November 10.

While some of the procedural objections might be relevant to the issue of sanctions, the Court cannot address some of them because Mr. Chester sought a nonsuit before those issues could be developed. However, the record is clear as to others of them. For example:

1. *Improper Service.* Va. Code § 8.01-300 requires service on the County Attorney if the plaintiff sues either the County or an individual member of the Board if the action arises "out of official actions of such supervisor." Mr. Chester's pleadings refers to the Court's ordering action by the individual defendants "in their respective capacities as members of the Board and to their performance of "governmental duties," so it is clear that he recognized that the action arose "out of official actions of the defendants. While Mr. Chester requested service on each individually named defendant, he did not request and did not achieve service on the County Attorney as required by the statute.

2. *Inadequate Identification of Plaintiffs.* Rule 3:2(b) of the Rules of the Supreme Court of Virginia requires that the caption of the complaint include the names of all of the parties. Mr. Chester's complaint listed only himself "et al." While that abbreviated form of caption is frequently seen in documents filed after the initial complaint, the first pleading must comply with the Rule. There were 10,466 or 10,459, or 7,950 individuals not listed. One of the Individuals who purported to have signed a petition which Mr. Chester distributed has written to the Court stating that he does not want Mr. Chester to represent him, and he does not want to a part of the case.

Both of those procedural missteps are unworthy of an attorney of Mr. Chester's experience, and both would have been avoided had Mr. Chester made a cursory examination of the applicable law. Either he did not do that, or he elected not to follow the law or the Rules.

More fundamental, however, are three other issues:

1. *Characterization of the Case As a Class Action.* Mr. Chester's pleading states that this case is a "class action suit." It is not entirely clear, however, what class Mr. Chester purports to represent. If it is all of the citizens of Augusta County, it is a true class action. If it is the 10,466 or 10,459, or 7,950 "Signatories," then it is not a class action at all, but a suit filed by a number of people, only one of whom is named in the caption and many of whom are not susceptible of easy identification from the attached petitions.

Mr. Chester characterized the pleading as commencing a class action, but the applicable statutes that provide remedies for persons dissatisfied with a county assessment contemplate that each individual may pursue a separate action, in part because each individual wronged by the assessment is wronged in a different way and to a different degree. There is no provision in the statute that permits a class action. Moreover, "Virginia is not a class-action state, and 'an individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless authorized by statute to do so'." *Nationwide Mutual Ins. Co. v. Housing Opportunities Made Equal, Inc.,* 259 Va. 8, 23 (2000).

In light of that clear statement of law, the question that must be answered is whether Mr. Chester could reasonably have believed that this was a case appropriate for a class action given that there is no statutory authority for it and given a clear statutory remedy for individuals seeking specific relief. The Court's conclusion is that Mr. Chester, had he done a minimum amount of research, could not have concluded that this case should be brought as a class action.

In his brief, Mr. Chester argued that class actions are appropriate in other contexts, citing statutes that specifically authorize them, and he then concluded with the question: "Based on the facts, why not a class action on behalf of Citizens aggrieved by their government?" However charged the language of the question was, Mr. Chester failed to note that he had answered his question in the asking of it. In each instance that he observed a class action was appropriate, Mr. Chester cited the statute authorizing a class action. In this instance, he did not cite a statute authorizing a class action, and he cannot.

It is the lack of authority to file a class action suit that Mr. Chester does not recognize. Indeed, with respect to the Court's decision in *Nationwide Mutual Ins. Co., supra,* Mr. Chester ignored the requirement that class actions be statutorily permitted and, in his brief, he incorrectly represented that the Supreme Court said that "an individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless

authorized to do so." See Mr. Chester's brief at page 3. With that inaccurate representation of what the Court held, Mr. Chester maintains that he was authorized by the Petitions to bring the suit. However, while purporting to rely on the relevant language of the case, Mr. Chester, in fact, misquoted that language by failing to include the entire sentence, omitting the words by which the Court identified the source of the authorization. As noted above, the accurate quotation of the Court's language is that "an individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless authorized *by statute* to do so." (Emphasis added.) Omitting the modifying prepositional clause "by statute," Mr. Chester evades confronting (and inappropriately turns to his advantage) the central issue of describing the circumstances in which a class action is appropriate. In fact, as I have said and as Mr. Chester should know, there is no statute authorizing a class action in this context.

Assuming that the case is not a class action,[1] then it is, as I previously observed, a suit filed by Mr. Chester for a number of people not named in the caption and many of whom are not susceptible of easy identification. Under that characterization of his suit, Mr. Chester ignored Rule 3:2(b) of the Rules of the Supreme Court of Virginia, which requires that the caption of the complaint include the names of all of the parties. That rule is a simple one, but it satisfies the essential due process requirement that defendants are entitled to know who is suing them.

2. *Improper Parties.* Mr. Chester has sued each of the individual members of the Board and the Commissioner, but the complaint does not contain a single allegation that any of those individuals took any action in his[2] individual capacity, the complaint does not contain any allegation that any of those individuals acted in any capacity other than in his governmental capacity, and the complaint does not contain any allegation of any action taken or not taken by any of the individuals which is susceptible of mandamus. As I previously noted, the complaint does not name the Board, and it does demand that the defendants pay costs in their individual capacities. Those facts distinguish this case from any decided prior to the enactment of Va. Code § 15.2-1405. Va. Code § 15.2-1405 provides, in part, as follows:

---

[1] In his brief, Mr. Chester asserts, for the first time, that it is "not a pure class action suit for a number of people in the county did not sign the petition."

[2] I am using the grammatical "his."

> The members of the governing bodies of any . . . political subdivision . . . shall be immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members of the governing body . . . which does not involve the unauthorized appropriation or misappropriation of funds. However, the immunity granted by this section shall not apply to conduct constituting intentional or willful misconduct or gross negligence.

Mr. Chester did not allege that any member of the Board engaged in intentional or willful misconduct or gross negligence. In fact, his only allegations regarding actions or inactions by members of the Board were actions taken by the Board as a whole. With respect to the Commissioner, who is not covered by the statute, Mr. Chester made no identifiable allegations at all other than that she was the "duly elected Commissioner of the Revenue of Augusta County."

The case of *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320 (1995), dealt with a claim for injunctive relief (not mandamus but relief of the same character although technically different). Relying on a predecessor of Va. Code § 15.2-1405 (but containing the same substantive language relevant to this case),[3] the trial court awarded sanctions because, in light of the clear mandate of the statute, "the allegations made against the Individual Supervisors were not warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law," *Id.* at 333, Remarkably, in his brief, Mr. Chester states that the "County's motions for sanctions was not decided; however, it seems that, since the Supreme Court ruled in part in favor of the citizens, sanctions would ultimately be denied." See Mr. Chester's brief at page 3. That is an inexplicable misreading or a disturbing misrepresentation of the Court's holding.

In *Concerned Taxpayers*, the trial court "granted the Individual Supervisors' motion for sanctions and entered judgment against Concerned Taxpayers and their attorneys, jointly and severally, for legal expenses incurred in defending the claim." *Id.* at 332. Having determined that the

---

[3] Va. Code § 15.1-7.01 provided that members of the governing bodies of local governmental entities "shall be immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members of the governing body . . . which does not involve the unauthorized appropriation or misappropriation of funds."

posture of the case did not preclude its considering the question of sanctions, the Supreme Court addressed the merits of Concerned Taxpayers' claim that the trial court had abused its discretion in finding that sanctions were appropriate. On consideration of the merits of that claim, the Court unequivocally affirmed the trial court's award of sanctions, holding that "the trial court did not abuse its discretion in concluding that the allegations against the Individual Supervisors were not warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law." *Id*. at 334. The case was remanded to the trial court for further consideration of other matters, not including the issue of sanctions.

In light of *Concerned Taxpayers of Brunswick County*, on this issue, the question that must be answered is whether Mr. Chester could reasonably have believed that the individually named supervisors fell within any of the exceptions of that statute in light of the fact that they were acting within the realm of their legislative function and are not subject to personal liability based on their decisions made on behalf of the County. The Court's conclusion is that Mr. Chester, had he done a minimum amount of research (limited only to looking at the Code and recognizing that his pleading did not address any act by any individual member of the Board), could not have concluded that this case should be brought against those individual defendants.

In light of the fact that Mr. Chester did not allege any substantive facts regarding the action or inaction of the Commissioner and did not articulate in any way how she was involved in the actions from which he sought relief, the Court concludes that Mr. Chester could not have reasonably concluded that this case should be brought against her.

3. *Inappropriate Relief Requested*. In the pleading, Mr. Chester demanded that the Court order the individual defendants "to either perform their respective governmental duties or, in the alternative, to prohibit certain actions" as purportedly described in the pleading. Addressing the latter demand, I note that the pleading does not specify any act that the Court is to prohibit With respect to the former, I note that Mr. Chester apparently recognized that the actions that he demanded that the Court order that the defendants perform were "governmental duties," but he made no distinction as to whether they were discretionary or ministerial duties.

In his prayer, Mr. Chester asked that the Court "issue a writ of mandamus pursuant to Section 8.01-644 against" each of the individual defendants:

a. ordering [them] to set aside the 2009 assessments. . . .

b. ordering [them] as required by law for Augusta County either to issue new corrected substantiated assessments in accordance with the valuations as per January 1, 2009, or, in the essence of time and costs, to adopt the existing 2005 assessments as assessments for January 1, 2009;

c. ordering [them] to pay all costs for this proceeding; and

d. for general relief.

a. *Writ of Prohibition.* Mr. Chester styled his pleading as a "Petition for a Writ of Mandamus and/or Prohibition."

"A writ of prohibition is an extraordinary remedy employed to redress the grievance growing out of an encroachment of jurisdiction." *Elliott v. Great Atlantic Management Co.*, 236 Va. 334, 338 (1988) (quoting *James v. Stokes*, 77 Va. 225, 229 (1883)). The writ applies only to prevent exercise of the jurisdiction of the court by the judge to whom it is directed when the judge either has no jurisdiction or is exceeding his jurisdiction, *In re Commonwealth, Dep't of Corrections.* 222 Va. 454, 461 (1981); *Grief v. Kegley*, 115 Va. 552, 557 (1913). Accordingly, a writ of prohibition is limited to instances in which a superior court is addressing an inferior court or authorized quasi-judicial body. It has no applicability to a situation in which a circuit court is addressing individual members of a county board of supervisors (acting in personal or legislative capacities) or a commissioner of the revenue (acting in an executive capacity).

Although he styled his petition as though he were asking for a writ of prohibition, Mr. Chester offered no justification for such a writ. It is a remedy entirely inappropriate to the allegations in his pleadings, because it does not address the relationship of the Circuit Court to the named defendants, and it has no bearing even on the relief for which Mr. Chester prayed.

b. Writ of Mandamus. Like prohibition, "mandamus is an extraordinary remedy that may be used 'to compel performance of a purely ministerial duty, but it does not lie to compel the performance of a discretionary duty'." *Ancient Art Tattoo Studio, Ltd. v. City of Virginia Beach*, 263 Va. 593, 597 (2002). "A ministerial act is 'one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done'." *Richlands Medical Ass'n v. Commonwealth*, 230 Va. 384, 386 (1985) (quoting *Dovel v. Bertram*, 184 Va. 19, 22, 34 S.E.2d 369, 370 (1945)).

Before a writ of mandamus may issue there must be (a) a clear right in the petitioner to the relief sought, (b) a legal duty on the part of the respondent to perform the act which the petitioner seeks to compel, and (c) there must be

no adequate remedy at law. "The co-existence of these elements, standing alone, will not always suffice to justify the issuance of the writ . . . [but] the absence of any of these elements will make the issuance of the writ invalid." *Richmond-Greyhound Lines v. Davis*, 200 Va. 147, 152 (1958). Mandamus is the proper remedy to compel performance of a purely ministerial duty, but it does not lie to compel the performance of a discretionary duty. *Id*. at 584. Hence, the "legal duty" to which item (b) refers must be a ministerial one, not one that involves the exercise of discretion.

With regard to the remedy of mandamus as it applies to this case generally, Mr. Chester did not plead the existence of any one, much less all three, of the required conditions predicate to the issuance of a writ of mandamus. Without reaching the third condition (whether there is a legal remedy), I note that Mr. Chester has not identified the source of any "clear right" that he has for the remedy of mandamus, and he has not identified any legal duty (imposed by statute, court order, or otherwise) requiring the defendants to perform the acts which he asks the Court to mandate. Note that the legal right cannot be created and the legal duty cannot be initially imposed by the Court's order of mandamus. On the contrary, the petitioner must have a right to demand enforcement of a preexisting legal duty before he is justified in requesting the issuance of the writ. Moreover, Mr. Chester has not identified any purely ministerial duty that any of the individual defendants has failed to perform. He did not, for that matter, allege any ministerial duty neglected by the defendants.

Certainly it is not a ministerial duty for the individuals to "set aside the 2009 assessments." Indeed, the individual defendants have no authority whatsoever, ministerial or discretionary, to take such an action. Unless Mr. Chester is suggesting that the Court has authority to order individual board members to vote a certain way on a matter of discretion before that legislative body (and the Court clearly cannot subvert the democratic process in such a way), it should have been obvious to him that none of the defendants could comply with such an order to yield the effect that Mr. Chester seeks.

Even assuming that the Board had the lawful authority to "set aside" the assessment, it would be a discretionary act, not a ministerial one. While the Board must initiate the assessment pursuant to Va. Code § 58.1-3252, Mr. Morgan argued that, even the Board cannot "set aside" the assessment because the Code gives it no power even to adjust, much less erase, assessments, I note that it appears that the Board can order a general reassessment pursuant to Va. Code § 58.1-3254, but that is not the same as "setting aside" an existing assessment. The Court's authority to issue a writ of mandamus depends on

there being a clearly imposed ministerial duty which the Board has not performed, and Mr. Chester has not, and cannot, cite any authority requiring the Board to set aside the assessment.

The Commissioner, of course, has no authority either to assess or to "set aside" an assessment, so Mr. Chester's demand that she be included in the order makes no sense.

The same observations apply to the demand that the Court enter an order "as required by law for Augusta County . . . to issue new corrected substantiated assessments in accordance with the valuations as per January 1, 2009." First, for the same reasons I have already stated, the named defendants have no authority to do whatever it is that Mr. Chester is demanding in this subparagraph. Second, if it could be done, it is only the Board of Supervisors that could do it, Mr. Chester has cited no authority for the Board to do it, and, if it were to be done, it would be a discretionary, not a ministerial, act. Third, the Court is not certain to what "law for Augusta County" Mr. Chester refers. Last, the Court is unclear as to what Mr. Chester means by "substantiated assessments."

Again, the Commissioner has no authority to perform the act that Mr. Chester demands, and her doing so would have no legal effect.

Finally, it is even less clear by what authority the Court could order the individual defendants to "adopt the existing 2005 assessments as assessments for January 1, 2009," or, for that matter, by what authority they could do so. If the action were lawful, it would require action by the Board of Supervisors, and the Board is not a party to this case. Moreover, the Board has no authority to adopt the existing 2005 assessments; on the contrary, the Board has a positive duty to initiate an assessment procedure every four years and to follow the statutorily prescribed mechanism to accomplish it. To "adopt the existing 2005 assessments" would be a clear violation of the Board's statutory duties.

For all of those reasons, Mr. Chester's application for a writ of mandamus is a remedy that simply and clearly does not apply in this case, not only because he is demanding that the Court order that the defendants perform discretionary acts but because the very acts he demands be performed are not within the power of the defendants or of the Board itself.

With respect to each of the numbered issues which I have discussed, the Court concludes that a competent attorney, after reasonable inquiry, (a) could not have concluded that the case could have been brought as a class action or that it could have been brought without adequate disclosure of the parties plaintiff, (b) could not have concluded that the case should have been filed against the individual defendants, (c) could not have concluded that either of

the remedies requested were appropriate, and (d) could not have concluded that the case, taken as to each of those issues or as a whole, was well grounded in fact and was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

The defendants did not present evidence of their attorney's fees (presumably because the County Attorney represented them), but the Commissioner testified that the cost to the County of preparing to defend this case exceeded $4,000.00. Without questioning the reasonableness of that cost, the Court assesses the sum of $2,000.00 against Mr. Chester for filing a suit that clearly justifies the imposition of sanctions.

Because this is an issue that has generated so much public attention (and rightly so), it will not do for the Court simply to articulate the sometimes technical legal principles involved without addressing the context in which they apply in this case. The fact of the matter is that litigation is quite an expensive proposition, both for individuals and, in this instance, for the Commonwealth and the County. It is not something to be undertaken lightly or without careful thought and research, and, when it is (at least in some cases), there must be some recourse for the party who was the target of litigation so frivolous as to merit sanctions, whether that target is an individual or, indirectly, the taxpayers who pay the cost of the defense.

In his brief, Mr. Chester asserts that, in seeking sanctions, it is the motive of Augusta County "to silence the people's attorney." That kind of comment is a last refuge of one who seeks exoneration for his actions without acknowledging responsibility for his errors. Whatever the County's motive may be, the purpose of the Court in imposing sanctions is not to "silence" an attorney, who pleads a poor case; it is to attempt to ensure that he pleads a better one next time. Mr. Chester must recognize that it was he who elected not to take the case to a decision on the merits but to request a nonsuit. It was he who crafted pleadings leaning on slender legal reeds, and then abandoned them, thereby costing the citizens of Augusta County tax dollars with no benefit whatsoever to them. In light of those facts, rather than questioning the County's motive in asking for sanctions in a case so poorly pleaded as this one, one might inquire what Mr. Chester's motive was in apparently rushing to file it without proper research and consideration.

Mr. Chester has clothed himself in a mantle of the "people's attorney," insisting that only he has the people's interest at heart, but good intentions do not insulate him from the consequences of a lawsuit which was ill-conceived, poorly pleaded, without basis in law, and which, in the end, he elected not to pursue, perhaps for those very reasons. This is not a case of a modest, selfless, unassuming, idyllic Robin Hood seeking justice against a despotic, dictatorial,

evil, and unelected King John. Unlike Mr. Chester, who is the people's representative by virtue of his own pronouncement, the Commissioner and the members of the Board are themselves the representatives of the people, constitutionally elected by the voters and answerable to them at the polls. If the people are sufficiently disaffected with the members of the Board of Supervisors or the Commissioner, the voters have remedies to voice that, not the least of which is to express their dissatisfaction by not re-electing them. Mr. Chester, on the other hand, having appropriated to himself the title of the "people's representative," will apparently hold the position for so long as he stands on the soapbox proclaiming to the press that it is so.

I understand that many citizens see Mr. Chester as the champion he purports to be. That aside, if Mr. Chester is to represent the people (or specifically named individuals) in a court of law, he must do so with competence and professionalism, he must do so pursuant to the law, within the rules established for the orderly disposition of legitimate claims, and he must seek appropriate relief. Although Mr. Chester stated more than once, in chambers and in the courtroom, that he "intended to make law in this case," he does not have the power or authority to do so. He cannot successfully argue that his perception of the difficulties or inefficiencies of individuals' exercising their rights under the Constitution and statutes of the Commonwealth require that the Court fashion a remedy which neither the Constitution of Virginia nor the General Assembly has authorized. He cannot follow a procedure not recognized in the Commonwealth in this context (if it is a class action), he cannot ignore the rules that require that he properly identity his clients (if the plaintiffs are limited to the "Signatories"), he cannot sue those specifically insulated from suit by statute, and he cannot pursue remedies which are inappropriate in the context and unavailable to afford relief. In short, Mr. Chester cannot demand, and this Court cannot constitutionally permit, the redress which he seeks.

In essence, Mr. Chester is asking that the Court engage in a kind of activism that would undermine the separation of powers by arrogating to the judicial branch the unconstitutional power to act as a super-legislature. Operating within the limitations properly imposed by the Constitution of Virginia and the General Assembly and adhering to the concept of limited government, the Court cannot authorize procedures or create remedies out of whole cloth that do not exist under the laws of the Commonwealth in the context of this case.

Ours is a nation of law, ours is a sovereign Commonwealth of law, and that law flows from the Constitution and the enactments of the General Assembly. Mr. Chester cannot rewrite the law, and he cannot demand that the

Court do it for him because it is inconvenient to him to work within the parameters of the existing statutes and case law. If Mr. Chester wants to pursue the relief he seeks in the fashion in which his pleading frames it, his remedy is to persuade the General Assembly to authorize that relief and those procedures. However, he may not demand that the Court ignore the law, and he may not put others to the test and expense of defending a suit which was improperly pleaded from nearly every perspective.

To be sure, each citizen who is not satisfied with the reassessment has a right to pursue the remedy provided by statute, but the suit filed by Mr. Chester is not the vehicle to vindicate that right.

I ask that Mr. Morgan prepare the order, and, at such time as it is presented to the Court, the Court will enter Mr. Chester's order of nonsuit.

### Chester v. Shrewsbury, Case No. CL09000266

In this case, Mr. Chester filed suit against W. Jean Shrewsbury, the Augusta County Commissioner of the Revenue (the Commissioner). The case was filed naming Mr. Chester in an individual capacity and purporting to represent 250 other individuals. In the suit, Mr. Chester asked that the Court issue a writ of mandamus ordering the Commissioner to provide him "all appraisal cards or sheets, including but not limited, to the appraised value of the properties and improvements, if any, plus the calculations and methodology used in determining the assessed values thereon for the years of 2005 and 2009, for each of the attached real estate property owners for each of their parcels." At the hearing, Mr. Chester acknowledged that his request to the Commissioner was based on the Virginia Freedom of Information Act (the Act), and his suit was grounded on Va. Code § 22-3713, which specifically provides for the issuance of a writ of mandamus to a public official subject to the act who fails properly to respond to a request covered by the Act.

Note that mandamus is the statutorily prescribed remedy and that the acts are ministerial acts, clearly defined in the statute. Neither party made an issue of whether the Commissioner is a public official or "public body" who is subject to the Act. It certainly is true that the Commissioner is subject to the requirements of Va. Code §§ 58.1-3331 and 58.1-3332, but that is a different question.

Mr. Chester's pleading alleged that, on February 17, 2009, he requested the Commissioner to provide to him "all appraisal cards or sheets for certain parcels of real estate as set forth by [sic] the attached single summary assessment sheets for both 2005 and the current 2009 current assessments."

656

He further alleged that the Commissioner agreed to supply the documents for the 2005 assessments but denied his request for the 2009 assessments. The next day, February 18, 2009, Mr. Chester filed the suit.

Va. Code § 2.2-3704, which governs the procedures of request and response pursuant to the Act, provides in part as follows:

A. Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. . . .

B. A request for public records shall identify the requested records with reasonable specificity. . . . Any public body that is subject to this chapter and that is the custodian of the requested records shall promptly, but in all cases within five working days of receiving a request, provide the requested records to the requester or make one of the following responses in writing. . . .

4. It is not practically possible to provide the requested records or to determine whether they are available within the five-work-day period. Such response shall specify the conditions that make a response impossible. If the response is made within five working days, the public body shall have an additional seven work days in which to provide one of the four preceding responses. . . .

F. A public body may make reasonable charges not to exceed its actual cost incurred in accessing, duplicating, supplying, or searching for the requested records. No public body shall impose any extraneous, intermediary, or surplus fees or expenses to recoup the general costs associated with creating or maintaining records or transacting the general business of the public body. Any duplicating fee charged by a public body shall not exceed the actual cost of duplication. . . . All charges for the supplying of requested records shall be estimated in advance at the request of the citizen. . . .

H. In any case where a public body determines in advance that charges for producing the requested records are likely to exceed $200, the public body may, before continuing to process the request, require the requester to agree to payment of a deposit not to exceed the amount of the advance determination. The deposit shall be credited toward the final cost of supplying

the requested records. The period within which the public body shall respond under this section shall be tolled for the amount of time that elapses between notice of the advance determination and the response of the requester.

At the hearing on October 1, 2009, the Commissioner testified (and Mr. Chester did not deny) that Mr. Chester appeared in her office at 4:30 p.m. on February 17 to lodge the requests described in his pleading. She and Mr. Chester agreed at the hearing that the she told him that she would produce the documents from 2005 but that she did not have in her possession the documents from 2009.

The following morning, well within the five working day period prescribed by Va. Code § 2.2-3704(B), the Commissioner wrote to Mr. Chester to notify him of the deposit required by Va. Code 2.2-3704(H) with respect to the 2005 documents. In that letter, the Commissioner confirmed that she did not have the 2009 documents in her possession and assured him that she would produce them to him as soon as she received them and could estimate the reproduction costs. The Commissioner testified that she did receive the 2009 documents on March 9, 2009, and wrote to Mr. Chester to inform him that she had and what the reproduction costs would be. Nevertheless, fewer than five working hours (not days) later, at 12:56 p.m. on February 18, Mr. Chester filed his petition for a writ of mandamus ordering the Commissioner to make available the documents of 2005 (which she had already said she would do) and the documents of 2009 (which she said that she did not have in her possession). Mr. Chester was aware of the Commissioner's response, as evidenced by the fact that he filed a copy of her letter with his petition.

As of the date of the hearing in October, Mr. Chester had neither paid the deposits nor picked up the material he requested.

As to this case, Mr. Chester had every reason to know that his claim was not well grounded in fact and was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. While Mr. Chester intended to make a public demand for the documents from the Commissioner, it is a fair inference that he intended to file the petition for a writ of mandamus regardless of the Commissioner's response to his requests. No only did he file the petition fewer than five working hours after he asked for the information, but he did so (a) despite the fact that he knew that the Commissioner had acceded to one of the demands which was the subject of his petition for a writ, (b) ignoring his own responsibility to pay the deposit which the statute required as to the 2005 information (a responsibility which

Mr. Chester had to meet before the Commissioner's obligation matured), and (c) and despite the fact that he knowingly did not give her an opportunity to obtain the information which she did not have in her custody but would deliver as soon as she had it. The Commissioner's responses were consistent with the requirements of the Act; Mr. Chester simply ignored the fact that she was complying with her statutory responsibilities under the Act, and his filing suit was without a justifiable basis.

The Commissioner testified that her cost in making available all of the information that Mr. Chester requested by mandamus was $856.00. However, because the statute contemplates that the Commissioner could have demanded the deposit before continuing to process the request, the Court will not assess that cost to Mr. Chester (although the Commissioner can demand payment before she delivers the information to him). Accordingly, the only sanction the Court imposes in this case is its strong expression of disapproval of Mr. Chester's misuse of the legal process before he had a legitimate suit to file.

Again, I ask that Mr. Morgan prepare the order, and, at such time as it is presented to the Court, the Court will enter Mr. Chester's order of nonsuit.